REICHERT *v.* METROPOLITAN TRUST CO.

CORPORATIONS—TRUST COMPANY—ULTRA VIRES—PUBLIC POLICY—
STATUTES.

> It was beyond power of trust company organized under 2 Comp.
> Laws 1915, §§ 8044–8077, and against public policy, for it
> to engage in sale of continuous series of mortgage participa-
> tions as regular business.

Certified questions from Wayne; Brennan (Vincent M.), J. Submitted October 18, 1932. (Calendar No. 36,758.) Decided March 2, 1933.

Receivership proceedings by Rudolph E. Reichert, State banking commissioner, against Metropolitan Trust Company, a Michigan corporation. Questions relative to preferences and distribution of assets certified to this court.

*Kenneth M. Stevens,* for Scott E. Lamb and Charles A. Smith, receivers of Metropolitan Trust Company.

*Miller, Canfield, Paddock & Stone,* for bondholders' protective committee.

*Anderson, Wilcox, Lacy & Lawson (C. J. Huddleston,* of counsel), for Highland Park Trust Company as successor-trustee of certain trusts.

*Yerkes, Goddard & McClintock (W. J. Powers* and *F. W. Donovan,* of counsel), for claimant Equitable Trust Company.

*A. W. Sempliner (Jason L. Honigman,* of counsel), *amicus curiæ.*

Potter, J. This case having come on to be heard in the circuit court upon more than 70 petitions objecting to the allowance of several claims as common claims instead of as preferred claims and to the disallowance of claims on guaranteed bonds, was not passed upon or decided by the trial court, but questions were certified to this court under Court Rule No. 78 (1931), as follows:

*Question No. 1:*

### Facts.

The Metropolitan Trust Company was incorporated on April 22, 1925, under the Trust Company Act No. 108, Pub. Acts 1889, as set forth in 2 Comp. Laws 1915, §§ 8044–8077. Article 3, of the articles of association, of the trust company, reads as follows:

"The purpose of the incorporation is in and by its corporate name, to take, receive and hold and repay and reconvey and dispose of any effects and property, both real and personal, which may be granted, committed, transferred, or conveyed to it with its consent, upon any terms, or upon any trust or trusts whatsoever, at any time or times, by any person or persons, including married women and minors, body or bodies corporate, or by any court, including the Federal courts in the State of Michigan, to administer, fulfill, and discharge the duties of such trust or trusts, for such remuneration as may be agreed on, to act as general agents or attorneys for the transaction of business, the management of estates, the collection of rents, interest, dividends, mortgages, bonds, bills, notes, and securities, for moneys; to act as agent for the purpose of issuing, negotiating, registering, transferring or countersigning the certificates of stock, bonds, or other obligations of any corporation, association, or mu-

nicipality, and to manage any sinking fund therefor on such terms as may be agreed upon, to accept and to execute the offices of executor, administrator, trustee, receiver, or assignee or guardian of any minor, incompetent person, lunatic, or any person subject to guardianship; to loan money upon real estate and collateral security, and execute and issue its notes and debentures, payable at a future date and to pledge its mortgages on real estate and other securities as security therefor; to take and receive from any individual or corporation on deposit for safekeeping and storage gold and silver plate, jewelry, money, stocks, securities and other valuable and personal property and to rent out the use of safes or other receptacles upon its premises upon such terms and for such compensation as may be agreed upon; to become sureties for administrators, guardians, or other trustees, or persons in cases where, by law or otherwise, one or more sureties are required; to guarantee or insure to grantees the validity of titles in real estate transfers, at a rate of compensation and upon such terms as may be agreed upon; to lease, purchase, hold and convey all such personal estate as may be necessary to carry on its business as well as such personal estate as it may deem necessary to acquire in the enforcement or settlement of any claims or demands arising out of its business transactions and to execute and issue in the transaction of its business all necessary receipts, certificates and contracts which shall be signed by such person or persons as may be designated by the by-laws of the corporation; to invest its capital stock in the manner provided by law; to lease, hold, purchase and convey real estate for the purposes and in the manner provided by section 10 of said act and to accept real and personal estate in trust, as in said section provided, and to do all other acts and things authorized by the said chapter, to be done by corporations organized under its pro-

visions, and all acts supplementary thereto or amendatory thereof."

The trust company loaned its general funds out to the public. Among the securities accepted under these loans were many mortgages upon real estate. Certain of these mortgages were sold by Metropolitan Trust Company, as an individual, to the Metropolitan Trust Company, as trustee, accepting in payment therefor from the said trustee certificates of participation in trust form issued by such trustee, and bearing the title "Metropolitan Trust Company guaranteed first mortgage six per cent. collateral bonds." The trust company then guaranteed the payment of and proceeded to sell these certificates of participation to the public. Four series of these guaranteed certificates, totaling $600,000 face value, were sold; series A, bearing six per cent. interest, being dated September 1, 1926, series B, bearing six per cent. interest, being dated May 1, 1927, series C, bearing five and one-half per cent. interest, being dated February 1, 1928, and series D, bearing five per cent. interest, being dated May 1, 1928, copies of these certificates are attached hereto and marked Exhibits A, B, C, and D, for further reference. Such "guaranteed first mortgage collateral bonds" were outstanding upon date of suspension of the trust company in the amount of $410,300. No payment under the guaranties was to be made until within 18 months after the respective due dates. The 18 months have not yet expired.

Validation certificates were obtained from the Michigan securities commission permitting the sale of these bonds.

There were five additional series of bonds issued, which were not guaranteed by the trust company.

Metropolitan Trust Company suspended business June 18, 1931; on June 20, 1931, a temporary receiver was appointed, and on July 16, 1931, permanent receivers were appointed.

No default of any kind had occurred on any of the guaranteed issues aforesaid prior to the appointment of permanent receivers. After the appointment of permanent receivers, Highland Park Trust Company was appointed successor-trustee to Metropolitan Trust Company and all of the mortgages securing said guaranteed participation issues were assigned to the successor-trustee, who has since administered the trust.

On August 4, 1931, an order was entered requiring claimants to prove their claims within four months from the date of said order and providing that no claims would be received after December 4, 1931. This time was subsequently further extended by a court order to January 4, 1932.

Holders of guaranteed bonds filed their proofs of claim for the full par value of their bonds. No default occurred on the part of the trust company in turning over all funds collected on the mortgages, but defaults have since occurred in the payment of the interest on such bonds and, in some instances, in the payment of the principal.

During the time that the company acted as trustee for these bond issues, it loaned or advanced out of its general funds, or commingled general and trust funds, $5,800.25 to itself as trustee for use in retiring $5,137.50 in principal of bonds and paying $662.75 in interest due on coupons. The retired bonds have been canceled and are in the possession of the receivers.

Subsequent to the appointment of the receivers, and before the appointment of a successor-trustee, they collected some funds from the underlying security of the bonds and offset this amount against the indebtedness of the trustee to the company. The receivers' right to such set-off has been contested. The successor-trustee has also contested the right of the receivers to recover from the successor-trustee the balance of this advance.

### Questions of Law.

(a) Was the guaranty of Metropolitan Trust Company on such bonds *ultra vires?*

(b) If the foregoing question is answered in the affirmative, is the defense of *ultra vires* now available to the receivers as against the holders of the bonds upon which claims have been filed?

(c) If the foregoing questions are answered in the negative, can the holders of these bonds prove their claims as contingent claims in view of the fact that the 18-month period after default has not expired and the loss, if any, has not been yet determined?

(d) If question (c) is answered "yes," must the receivers delay the payment of any and all dividends until such time as there can be a final closing of the receivership estate?

(e) Where the trust company paid to some of the holders of bonds and/or coupons under guaranteed bonds series "A," "B," "C," and "D," principal and interest without respect to collections from mortgages securing same, said payments being made from general corporate bank accounts of said trust company and not from any segregated trust fund, were such payments in partial satisfaction of the liability of the said trust company as guarantor?

(f) If the answer to question (e) is "yes," would the trust company out of collections subsequently received by it as trustee from said mortgages constituting the *corpus* of such trust estates be entitled to repayment or set-off for moneys so advanced if such repayment or set-off preferred said trust company over holders of bonds and/or coupons who did not participate in the payments as made by the trust company?

(g) Would a successor-trustee be entitled to all collections made by the receivers of the trust company from mortgages constituting the *corpus* of

trust estates after June 18, 1931, without deductions for payments made to holders of bonds by the trust company prior to its closing?

*Question No. 2:*

*Facts.*

In the conduct of its business, Metropolitan Trust Company was custodian of various funds which it held in trust as receiver, trustee, or agent. Said funds so held were commingled with other trust funds and with the general funds of the company.

On the day the company suspended business, it had cash on hand outside checks and cash items in the amount of $4,022.94.

In its general banking accounts, it had $47,059.39, of which $45,966.09 was on deposit with the National Bank of Commerce of Detroit. The trust company owed this depositary $86,700.58. Promptly upon the closing of the company, the depositary set-off the $45,966.09 against the company's indebtedness. As a result, the total cash that came into the hands of the receivers totaled $5,116.24. All of the cash on deposit in these general banking accounts consisted of general funds of the company commingled with trust funds.

In addition thereto, the company had a separate bank account for estate balances in the sum of $17,444.88, which was not commingled with other general funds of the company. This latter amount came into the hands of the receivers merely for distribution to the beneficiaries or successor fiduciaries when they were appointed.

The total of the trust funds commingled was greatly in excess of the total amount of all deposits in banks, plus cash on hand, and it has been impossible to trace such trust funds so commingled.

The receivers disallowed all claims for preference made by such trust-fund claimants and allowed all such claims as common claims.

*Questions of Law.*

(a) Where trust funds have been commingled with other trust funds and with other general funds of the trust company, and where said trust funds cannot be traced into any specific tangible assets, and where the cash on hand and in banks on the date of suspension of business by the trust company is greater in amount than certain single trust funds so commingled but less in amount than other single trust funds or than the total of trust funds so commingled, can any or all of said trust funds be legally construed to be entitled to a preference over common claims?

(b) If the answer to question (a) is "yes," do such preferred trust claimants share *pro rata* in the cash on hand and in banks at the time of suspension?

(c) If the answer to question (b) is "yes," should the "cash on hand and in banks" be construed to include that amount set-off by the depositary against the company's debt to it?

(d) Did the depositary bank have the right to set-off against the indebtedness of the company to it funds on deposit consisting of commingled trust funds and general funds?

(e) If the answer to question (a) is "yes," then did the payment of interest by the trust company upon funds in certain trust accounts establish the character of claims to such funds as general claims, there having been no agreement made to the contrary?

The Metropolitan Trust Company was a Michigan corporation. It signed a guaranty contained in the bonds involved, designated as series A, B, and C, as follows:

"And said trust company hereby guarantees the payment of the principal of this bond as and when collected from the respective mortgagors, but in any event within 18 months after demand by the holder

made to the trust company on or subsequent to the due date of the principal of such bond, and the interest accruing thereon semi-annually from the date hereof, in lawful money of the United States of America of or equal to the present standard of weight and fineness, as set forth in this bond and the coupons annexed hereto.''

The language of the guaranty used in bonds, series D, is:

''Said Metropolitan Trust Company hereby unconditionally guarantees the payment of the principal of this bond as and when collected from the respective mortgagors, but in any event within 18 months after demand by the holder made to the trust company on or subsequent to the due date of the principal of such bond, and the interest accruing thereon semi-annually from May 1, 1928, in lawful money of the United States of America of or equal to the present standard of weight and fineness.''

Like other corporations, this trust company is a creature of law. It may lawfully exercise no power and authority except that given to it by law. There is nothing in either the charter of the corporation or the statute of its organization which gives it any express power or authority to guarantee the payment of notes, bonds, or other obligations. Its implied powers are limited to those necessary to enable it to exercise the powers delegated to it by its charter and the statute providing for its creation. 2 Fletcher, Cyclopedia of Corporations, p. 1814. It occupies a fiduciary relation to the beneficiaries of the several trusts lawfully reposed in it who are entitled to its protection. 2 Fletcher, Cyclopedia of Corporations, p. 1814. It has no right to speculate with the trust funds intrusted to its care.

This trust company, under the statutes of this State, had no right to imperil the trust funds sub-

mitted to its care by becoming surety (7 C. J. p. 808) ; and no right to guarantee the payment of the bonds of others. *Federal Land Bank of St. Paul* v. *Crookston Trust Co.,* 180 Minn. 319 (230 N. W. 797) ; *In re Bankers' Trust Co.,* 27 Fed. (2d) 912; *Ward* v. *Joslin,* 186 U. S. 142 (22 Sup. Ct. 807) ; 2 Fletcher, Cyclopedia of Corporations (Perm. Ed.), § 721.

It is claimed that if guaranteeing these bonds was *ultra vires,* the trust company, having obtained the money from their sale, is estopped from questioning the validity of its guaranty; that it cannot profit by its own wrong, and before repudiating such obligations it must put the bondholders *in statu quo.* It is claimed the receiver stands in the place of the trust company and is bound by these rules. If the receiver should satisfy the trust companies' alleged liability on the guaranties from its assets, there would be nothing left to satisfy its general creditors or its obligations to the beneficiaries of the trusts lawfully reposed in it. If the receiver pays the illegal obligations of the trust company, it cannot pay its legal obligations. Obligations arising from its illegal acts should not be preferred to those arising from its legal acts.

The trust company, not having authority to guarantee the payment of these bonds, such guaranty is not enforceable against the receiver of the trust company. Those dealing with the trust company are presumed to have had notice of its lack of powers to guarantee the payment of the bonds (*Farmers & Mechanics' Bank* v. *Troy City Bank,* 1 Doug. 457 ; *Knickerbocker* v. *Wilcox,* 83 Mich. 200 [21 Am. St. Rep. 595]) ; and consequently no estoppel arises against the receiver, upon such colorable contracts of guaranty.

It would be anomalous if the trust company, by violating the law, guaranteeing the payment of

bonds, engaging in hazardous speculation, with or without compensation, contrary to its charter, in violation of public policy, when such bonds were purchased by those charged with notice of the trust company's lack of power, could as against the creditors and beneficiaries of the lawful trusts reposed in and accepted by it, divert its funds from lawful corporate purposes to those unlawful and opposed to public policy.

"The doctrine of *ultra vires,* by which a contract made by a corporation beyond the scope of its corporate powers is unlawful and void, and will not support an action, rests, as this court has often recognized and affirmed, upon three distinct grounds: the obligation of any one contracting with a corporation, to take notice of the legal limits of its powers; the interest of the stockholders, not to be subject to risks which they have never undertaken; and, above all, the interest of the public, that the corporation shall not transcend the powers conferred upon it by law." *McCormick* v. *Market Bank,* 165 U. S. 538 (17 Sup. Ct. 433).

A trust company may not lawfully by indirection do what it is forbidden to do by its charter and the law of its creation.

In *Bowers* v. *Lawyers Mortgage Co.,* 285 U. S. 183 (52 Sup. Ct. 350), the business of the mortgage company was carried on as follows:

"Upon receiving an application for a loan it caused an appraisal of the proposed real estate security to be made and procured a title insurance company to survey the property, make a report as to title and insure the same. The borrower, having executed and delivered a bond and mortgage to respondent, received from it the amount specified therein less charges for title insurance, survey, disbursements and recording tax and less a lending fee

which included the charge for appraisal. Respondent sold the mortgage loans. On the sale of a bond and mortgage as a whole, it delivered an assignable contract called 'policy of mortgage guarantee' to the purchaser. On the sale of part of a loan, it issued a participation certificate assignable by indorsement and registration on respondent's books and containing substantially the same provisions as the policy. By every such policy or certificate the purchaser appointed respondent his agent to collect the principal and interest, and the latter agreed to keep the title guaranteed and the premises insured against fire and to require the owner to pay taxes, assessments, water rates and fire insurance premiums. Respondent guaranteed payment of principal, as and when collected but in any event within 18 months following written demand made after maturity, and payment of interest regularly at an agreed rate usually one-half of one per cent. less than that specified in the bond. Respondent kept the difference and called it 'premium.' Respondent also retained the interest accruing between the making of the loans and the sale of the securities. For renewals of loans it charged extension fees."

And the court held,

"the guaranties contained in the policies and participation certificates were in legal effect contracts of insurance."

In *United States* v. *Home Title Ins. Co.*, 285 U. S. 191 (52 Sup. Ct. 319), where a similar case was before the court, it was said:

"The guaranty of payment of the principal and interest of mortgage loans constitutes insurance."

A trust company, under the laws of this State, differs from an insurance company. Each is a creature of statute. One is under the supervision of the banking department, the other under the supervision

of the insurance department.  We are unable to find the Metropolitan Trust Company had any power or authority, under the law of its creation, to guarantee the payment of bonds and mortgages delivered to the trust company, or any power or authority to guarantee the payment of participation certificates which were substantially similar to those issued by the Lawyers Mortgage Company involved in *Bowers* v. *Lawyers Mortgage Co., supra;* and *United States* v. *Home Title Ins. Co., supra.*

The receiver of the trust company represents all those legally interested in its assets as creditors. It is the duty of the receiver to administer the estate of such defunct trust company according to law, to protect its legal trusts from claimed liability upon illegal contracts.

Certified questions must be distinctly propounded (*Clark* v. *Dorr,* 5 Mich. 143) ; be strictly questions of law (*People* v. *Adwards,* 5 Mich. 22, 24 ; *Bagg* v. *City of Detroit,* 5 Mich. 66) ; not questions which involve or imply conclusions or judgment by the judges upon the weight or effect of testimony or facts adduced in the case. *Bagg* v. *City of Detroit, supra.* If the whole case, broken into parts, appears to have been certified, it will be dismissed. *Bagg* v. *City of Detroit, supra.*  Questions may not be certified unless the judge below has well-founded doubts upon them, save when they are new or of public importance. *Bagg* v. *City of Detroit, supra.*  Questions so broad and indefinite as to admit of different answers depending on the facts will not be considered. *Bell* v. *Wickham,* 255 Mich. 501. The rule does not contemplate this court shall be substituted as a trial court for the circuit court.  *Bell* v. *Wickham, supra; English* v. *Fairchild,* 5 Mich. 141 ; *Clark* v. *Dorr, supra.* The answers given to certified questions "shall be

given in the ordinary form of opinions." Court Rule No. 78, § 3 (1931).

We are of opinion the guaranties in question were *ultra vires*, which defense is available to the receiver of the trust company, and no claimed liability based upon such guaranty may be recognized by or enforced against the receiver, under the facts here involved, either absolute or contingent. The trust company had a right to act as trustee in trust mortgages to secure bond issues, to receive money paid by mortgagors and disburse it to bondholders. It had no right to pay other funds to bondholders, not arising from payments on the mortgages, by reason of its guaranty, to the prejudice of other creditors. No preferences among bondholders secured by any mortgage may obtain. All bondholders are secured ratably without preference. A successor-trustee of bonds stands in the same position as the original trustee, and is entitled to collect and enforce the mortgages.

Trust funds not traceable, not capable of identification, mingled with general assets, lose their identity as such and become general claims. A depositary bank, having no knowledge of the character of funds deposited with it, may set off the credit of the depositing customer against its debt due from it to the depositary bank.

McDONALD, C. J., concurred in the result.

BUTZEL, J. (*concurring in result*). The record shows that the trust company engaged actively in a mortgage business, loaning on mortgages and then selling a participating interest in these securities to the public. It did not sell these mortgages or beneficial interests therein for the purpose of raising necessary funds to conduct a trust business, but sold them outright as a part of a profit-making venture

by trading in these securities. Its guaranty, made as an inducement to effect such sales, was an exercise of a power extended neither by statute, charter, nor necessary implication. Were this an isolated case, where, in order to raise funds with which to carry on a trust business, a mortgage or participations in it had been sold accompanied by a guaranty, and the latter had been set up as a contingent liability in the company statement, there might be some merit in the assertion that this was merely a method by which the trust company exercised its express power to borrow money and issue notes accompanied by adequate security. The record, however, plainly shows that the trust company went much further and engaged in the sale of a continuous series of guaranteed mortgage participations as a regular business. It was beyond the power of the trust company, and against public policy, for an organization of this nature to engage in such a venture, and for this reason I concur in the result.

CLARK, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred with BUTZEL, J.