GERMAN BAPTIST ORPHANS' HOME v.
UNION BANKING CO. et al.

No. 3581.

District Court, W. D. Michigan, S. D.
Jan. 3, 1935.

Humphrey S. Gray, of Benton Harbor, Mich., for plaintiff.

Fremont Evans, of St. Joseph, Mich., for defendant Union Banking Co.

Ross H. Lamb, of Benton Harbor, Mich., for defendant Payne.

RAYMOND, District Judge.

Defendants have filed a motion, based upon several grounds, to dismiss the declaration. The principal reason for dismissal urged is that the contract to repurchase bonds set forth in the declaration and upon which plaintiff relies in its bill of particulars is void because it is against the public policy of the state of Michigan for banks to enter into such an agreement.

The declaration alleges in substance that plaintiff is a Kentucky corporation organized for the care of orphan children; that defendant the Union Banking Company, a corporation organized under the laws of Michigan, was for many years engaged in general banking business in the city of St. Joseph; that on January 21, 1930, the Union Banking Company sold all of its assets to the Commercial National Bank & Trust Company, a national banking corporation, the latter agreeing to pay all liabilities; that the national bank closed on September 25, 1931, and that W. R. Payne was appointed, and is now acting as, receiver; that plaintiff had from time to time purchased bonds from the state bank as an investment, upon the agreement that the bank would, upon request, and at any time prior to maturity of any bond, repurchase the same at par, plus the then accrued interest; that the plaintiff paid to the state bank the par value of the bonds plus accrued interest; that, prior to the maturity of said bonds, plaintiff demanded performance of said agreements and that several of said bonds were repurchased in pursuance thereof; that plaintiff still has bonds in the aggregate sum of $29,200 par value; that plaintiff, in September, 1930, and at

other times, has demanded repurchase of said bonds; and that in February, 1932, it tendered all of said bonds to each defendant, demanding performance of the repurchase agreements, but that defendants have refused to so perform the agreements. The declaration also alleges that all depositors in the state bank have been paid and that no assessment has been made upon its stockholders.

The allegations of the declaration are supplemented by a stipulation which has been entered into by the parties for consideration in connection with the motion to dismiss as follows: "That in considering and determining any motion in the nature of a demurrer, it is stipulated that each and every of said sales of bonds by defendant bank to plaintiff was a sale desired by plaintiff as a means of investing its surplus funds at a satisfactory rate of interest; that said sales were not effected as a result of urging by defendant bank, or as distress sales, or as an indirect method of enabling said bank to borrow money, or for the purpose of enabling it to collect a questionable asset or better secure some asset; and that at the time when and as said sales were made defendant bank could have sold said bonds for par and accrued interest through other sources, had it so desired."

The bill of particulars filed by plaintiff discloses that some of the bonds in question were purchased as early as September, 1924, and others as late as May, 1930. All of the securities involved are real estate bonds. For the purpose of the motion, defendants do not urge lack of authority in the officers of the state bank to make the several repurchase agreements, but rely primarily upon the claim that such agreements as are here sought to be enforced are void. Defendants concede that a bank has implied power in certain circumstances to indorse or guarantee notes, bills of exchange, and drafts, but insist that this power does not include such repurchase agreements as are relied upon in the present case. It is argued that the agreements in effect guarantee plaintiff's investment over a long period of years against loss either as to principal or interest at the expense of depositors and stockholders, and that such agreements are inimical to the public welfare and are therefore against public policy.

It appears from the stipulation that defendant state bank at the time of the sales had a market for the same bonds at the same price without any necessity for assuming the obligation to repurchase. The case does not therefore afford a basis for recovery such as was recognized in the case of Coon v. Smith (D.C.) 4 F.Supp. 960, where the plaintiff purchased notes at their face value, which was considerably in excess of their then market value, upon the agreement of the bank to repurchase at the price paid.

The present case clearly falls within the principles recognized in the case of Knass v. Madison and Kedzie State Bank, 354 Ill. 554, 565, 566, 567, 188 N.E. 836, 841, and no further or other discussion of those principles is required. In that case it was said:

"An outstanding characteristic of such an agreement as is before us is that it creates against the bank a contingent liability which cannot be measured or determined in prospect and can be determined day by day only by reading the shifting market value of the particular bonds guaranteed. Such contingent liability is not, and cannot be, accurately reported to the public officers having a right to a report upon the condition of such bank. So long as bonds sold under an agreement command a selling price above that guaranteed by the bank, the vendee will not return them. An inducement to return the bonds arises out of a depressed market. If a bank sell at par, with such repurchase agreements, real estate mortgage bonds amounting to $500,000, which because of a shrinkage in real estate values (now no longer considered impossible) were reduced to a valuation of $100,000 or less, a liability of $400,000 thus comes into existence, threatening, and in many cases utterly destroying, the safety of deposits and trust funds. Notwithstanding this, the bank has no control or influence over such shifting values. Nor could it require the return of such bonds when the market began to show signs of decline and thus stop the mounting of liability. It must await the election of the vendee as to the return of the bonds, and meanwhile the contingent liability arising on its contract increases. Such a transaction can scarcely be said to bear resemblance to the ordinary indorsement of a note or bill of exchange, in which banks are authorized to, and commonly do, deal, and which becomes by indorsement the obligation of the bank. The risk of complete destruction of a banking institution, and thus loss of deposits arising from the traffic in ordinary commercial bank paper by indorsement thereof, is by

no means comparable to the risk involved in the guaranty of a large number of real estate mortgage bonds, over which or their security the bank has no means of control. Such agreements are so fraught with danger to depositors and other creditors of the bank that it is inconceivable that any considerable number of bankers should deem them to be in accord with sound banking principles. * * *

"Are such contracts as here relied upon void as against public policy or violative of statutory enactment? Contracts against public' policy are generally unenforceable by any remedy. Am.Law.Inst., Restatement of the Law of Contracts, § 369. Public policy is a principle of law which holds that no one may lawfully do that which has a tendency to injure the public or to be against 'the public good. Banks are quasi public institutions. Their well-being concerns not only the stockholders, but the depositors and public at large. Contracts are against public policy when they tend to injure the public. Agreements such as are here involved fall' within that category. Recent experience, so general as to afford the basis of judicial notice, has shown that contracts not within the powers conferred on banks and which so jeopardize the safety of bank deposits as to result in their loss (sic), tend to produce widespread injury to the public and may properly be held void though there be found no specific statutory prohibition against them."

The foregoing case was cited with approval· in Hoffman v. Sears Community State Bank, 356 Ill. 598, 191 N.E. 280. The case of Reichert v. Metropolitan Trust Co., 262 Mich. 123, 247 N.W. 128, recognizes substantially the same principles as regards a trust company.

In its brief plaintiff discusses a theory of recovery based upon the assumption that the contract in question is void, and argues that there arose from this situation an implied contract upon the part of defendant state bank to return the consideration received. Several reasons exist why this theory of recovery cannot be sustained; the principal one being that the declaration contains insufficient allegations upon which to base such a claimed right. The bill of particulars which was filed contains no indication of that theory as a basis for recovery. There also exists grave doubt of the right of plaintiff to seek recovery both upon the ground of an alleged valid contract and upon a theory which· neces-

sarily involves an election to treat the contract as void. In any event, it is the court's view that the declaration and bill of particulars afford no support for consideration of this theory of recovery.

It follows that the motion to dismiss will be granted and an order entered accordingly.