REICHERT v. METROPOLITAN TRUST CO.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—APPRAISER'S FEE.
    Allowance of fee to appraiser in trust company receivership cannot be held excessive where testimony in regard thereto is not before Supreme Court on appeal by attorney from order as to his fees.

2. BANKS AND BANKING—RECEIVERS—ATTORNEY FEES.
    Allowance of alleged excessive fee to appraiser in trust company receivership would not justify proportionately higher fee to attorney for receivers.

3. SAME—ORDINARY SERVICES—SUBSTITUTION OF ATTORNEYS.
    Order of court fixing compensation of attorney for receivers of trust company at $375 per month for ordinary services is not disturbed on appeal, where he made no protest until after he had received $6,000 thereunder and other attorneys had been substituted.

4. APPEAL AND ERROR—ATTORNEY FEES.
    Supreme Court, in the exercise of its supervisory power over court orders as to allowance of attorney fees for extraordinary services recognized by the court in trust company receivership does consider claim of error where large part of such extraordinary services came to its direct attention.

5. ATTORNEY AND CLIENT—MEASURE OF VALUE OF SERVICES.
    In measuring value of services of attorney for receivership of trust company consideration is given to such matters as the ability of the trust estate to pay; the time, labor and skill required; loss of other business; amount involved in the controversy; benefit resulting to estate; contingency of compensation and character of employment.

6. SAME—OFFICE EXPENSES.
    Attorney's office expenses should be considered in fixing his fee where he devotes his entire time to particular retainer for considerable period and makes no extra charge for disbursements.

7. SAME—CLAIM FOR DISBURSEMENTS—EXTRAORDINARY SERVICES.

Attorney for receivers of trust company who accepted order of court setting his compensation at stated sum monthly for ordinary services may not claim additional compensation for disbursements except in connection with extraordinary services performed after said order.

8. APPEAL AND ERROR—FEES IN RECEIVERSHIP MATTERS.

Supreme Court is reluctant to disturb findings of trial court in fixing fees in receivership matters unless grossly exorbitant or inadequate.

9. ATTORNEY AND CLIENT—TRUST COMPANY RECEIVERS—COMPENSATION.

Compensation of attorney for receivers of trust company for extraordinary services involving expenditure of nearly 400 hours in the course of 16 months on novel questions and resulting in saving estate several hundred thousand dollars is increased from $6,000 to $10,000 in case where Supreme Court has peculiar knowledge of his work on appeals in several cases and where, also, all the testimony by leading members of the bar indicate that the services were worth an amount far in excess of the sum allowed.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted January 9, 1934. (Docket No. 81, Calendar No. 37,562.) Decided March 6, 1934.

Receivership proceedings by Rudolph E. Reichert, State banking commissioner, against Metropolitan Trust Company. On petition of Kenneth M. Stevens for fees for legal services. From order allowing $6,000 attorney fee for extraordinary services, petitioner and receivers appeal. Modified and affirmed.

*Richard F. Molyneaux* (*Wilber M. Brucker,* of counsel), for petitioner.

*Lyle G. Younglove,* for receivers.

*Patrick H. O'Brien,* Attorney General, and *Byron Geller* and *Frank H. Watson,* Assistants Attorney General, for State banking department.

BUTZEL, J. By order of the court on July 20, 1931, Kenneth M. Stevens, petitioner, was appointed attorney for Scott E. Lamb and Charles A. Smith, receivers of the Metropolitan Trust Company. The trust company, which had been organized under laws of the State of Michigan, suspended business on June 18, 1931, and the permanent receivers were appointed in proceedings brought by the State banking commissioner. At this time the books of the company showed assets of $2,126,501.29, and liabilities of approximately $2,000,000. According to the appraisal filed a few months later, the assets were found to be worth $968,246.39, but subsequently, on June 30, 1933, the receivers estimated their true worth to be only $655,459.25, owing to further shrinkage in values. The liabilities, however, had also been reduced during this period to the sum of $1,331,556.84, of which only $1,268.58 represented preferred claims. The receivers estimate that eventually creditors will receive dividends aggregating between 40 per cent. and 45 per cent. of the face of their claims.

The receivers were confronted with many difficult legal problems, the solution of which took up a large amount of petitioner's time both in and out of court. He was called upon to advise as to the following: The legal limitations within which the receivers might act; the establishment of general methods of handling credits and creditors, debts and debtors; policies with reference to the foreclosure of mortgages, payment of franchise fees to the State, collection of credits from depository banks, payment of obligations and recovery of collateral; general policies in regard to agencies and safekeeping accounts, administrative and executory estates, living trusts, and trusteed accounts; problems involving certificates of deposit and travelers' cheques, exten-

sion of notes, necessity and manner of a general appraisal, acceptance or refusal of set-off or credits against debts, liability upon tax anticipation notes, disposition of estates in which the trust company had acted as fiduciary; the determination of whether receivers could and should deposit bonds held by them with bondholders' committees; the method of liquidation and general policies relating thereto; the classifying, allowing or disallowing of claims against the estate, etc. Petitioner testified that upon his advice, followed by litigation, 81 claims, aggregating $981,236.55, were disallowed. Unquestionably, the large reduction in the amount of liabilities through disallowance of claims was a direct result of the extraordinary services of petitioner as hereinafter referred to, and for which he seeks extra compensation.

At the time of Stevens' appointment as attorney for the receivers, a firm of attorneys was also retained as "counsel," the latter receiving the same compensation as petitioner for what is termed the ordinary legal services performed. The attorney who personally handled all the work thus assigned to his firm makes no claim for any further compensation for extraordinary services, but insists that petitioner is entitled to a large award for such services, particularly stressing his industry, persistence, skill and ingenuity in the performance thereof.

On December 7, 1931, the court ordered that the sum of $2,500 be paid to petitioner, and a like sum to counsel, as a "present allowance * * * to be applied upon their fees for services." Subsequently, on January 28, 1932, the court entered an order providing that the sum of $750 per month be divided between petitioner and counsel for services from and after December 5, 1931. We italicize the

latter part of this order, inasmuch as it is the basis of petitioner's claim:

"Said sum to cover the fees of both attorney and counsel *for all ordinary matters in connection with the receivership estate and to be in full for such matters unless a further showing be made to this court for special allowance because of extraordinary services performed, such as are not anticipated at the time of the entry of this order.*"

On April 5, 1933, the court substituted other attorneys for petitioner and his associate counsel. There was not the slightest criticism of their work, but the substitution was made to enable other attorneys of ability and standing an opportunity to recoup their personal losses incurred by the failure of the trust company. Two weeks later Stevens filed a petition asking additional compensation amounting to $20,360. This request was denied, the trial court granting him the sum of $6,000, in full for the extraordinary services performed, and all other claims. He thereupon appealed to this court.

We pass by petitioner's complaint that he should not have been discharged at a time when the work was tapering down and consequently it would have been very profitable for him to continue under the same arrangement as to fees. We also pass by petitioner's claim that an appraiser was allowed a fee proportionately much higher than that awarded to petitioner for his services. The testimony in regard to such fee is not before us and we, therefore, cannot hold that it was excessive. Even if it were, this would not justify a repetition of error. The ordinary services for which petitioner received the sum of $2,500, to be applied upon his fees, extended from the time of his appointment to December 7, 1931, a period during which he devoted 58 "working

days,'' of five hours each, exclusively to the receivership. It is claimed by petitioner that he spent many additional hours during this period in the general study and legal research necessitated by the problems that arose, and that his partner also devoted 200 hours to the receivership, for all of which no additional charge was made. For the ordinary services performed in the 69 weeks following December 5, 1931, petitioner received the sum of $6,000, at the rate of $375 per month, in accordance with the order of the court. He is bound by this order. If he considered the compensation inadequate, he should have made his protest sooner or tendered his resignation.

However, it is admitted, and the trial court recognized the fact that petitioner did perform extraordinary services during this latter period. In full payment for such services, and all other claims, the trial court allowed the additional sum of $6,000. The petitioner contends that this is wholly inadequate, and on appeal has asked us to review the order of compensation and rectify any error made. We have exercised supervisory power in modifying an order or judgment for fees made by the trial court. *Fannon* v. *LeBeau,* 245 Mich. 162. We, however, recognize that the attorneys for a receiver act under the direction of the chancellor, who is cognizant of the work done by them and is, therefore, in a position to properly evaluate such services. Nevertheless, in the present instance a large part of the extraordinary services performed by petitioner has come to our direct attention and we are impelled to consider his claim of error. His extraordinary services may be classified into three major items: The State claim, the liquidation plan, and the certified questions.

A. *The State claim.* The State highway department, which had deposited funds of the State without bonds in the trust company, filed with the receivers a preferred claim for $304,305.90, the total amount of such deposits, with interest, and later petitioned for a return of this amount, asserting its right thereto by virtue of the "sovereign prerogative." Had the State been successful in its demands, the assets of the receivership estate would have been largely depleted. However, the receivers, through petitioner, contested the claim. Both the attorney general's office and petitioner filed exhaustive briefs in the circuit court, where the trial judge denied the State's request for preference. We are familiar with the litigation, having upheld the decision of the trial court in *Reichert* v. *Metropolitan Trust Co.* (*In re Dillman, State Highway Commissioner*), 264 Mich. 182, following the decision rendered the same day in *Fry* v. *Equitable Trust Co.,* 264 Mich. 165 (90 A. L. R. 175). The case was not presented to this court by petitioner, as he had been succeeded by other counsel in the meantime. However, petitioner filed exhaustive briefs in the lower court, and furnished his substituted counsel with the material employed in the successful defense against the claim in that court. Petitioner devoted 66 hours to the defense of this claim.

B. *The liquidation plan.* At the suggestion of Scott E. Lamb, one of the receivers, a plan of liquidation was proposed involving the exchange of receivership assets for claims in lieu of reducing the assets to cash in a depreciated market, as required by then-existing laws. This plan had been used in other States, but had not been attempted in Michigan. Petitioner gave the proposal the necessary study and drafted a law embodying Mr. Lamb's

suggestions, as well as additional ideas of his own. He also worked out the legal aspects of the plan, in co-operation with Mr. Lamb. Since legislation was necessary to make its operation feasible, he then presented the plan to the governor of the State of Michigan, who included it in his call for the special session of the legislature of 1932. Petitioner, together with Mr. Lamb, met with the legislative committee in charge of the proposed legislation, and offered suggestions in the drafting of the bill, which was subsequently enacted as Act No. 24, Pub. Acts 1932 (Ex. Sess.). Petitioner co-operated with the receivers in working out the complete plan in pursuance with this act, and in submitting it to the State banking commissioner and the trial court. The act subsequently met with the approval of the Michigan Bankers Association and has been recommended as a method of liquidation for closed banks and trust companies. Petitioner shows that he devoted 50 hours to this item.

C. *Certified questions.* Petitioner claims that this was the most important and complicated piece of work he performed, and resulted in saving to the estate a very large sum of money. It having become absolutely necessary to secure an authoritative ruling on certain legal questions arising in the course of the receivership, 12 relevant questions of law were drafted by petitioner and opposing counsel and certified to this court. Claims in excess of $400,000 had been made against the estate, based upon a guarantee of payment, by the Metropolitan Trust Company, of participation certificates in mortgages which had been sold by it, largely upon the strength of such guarantee. The validity of these claims was the main issue raised by petitioner in the certified questions. We answered such of the questions as

were deemed worthy of consideration in *Reichert* v. *Metropolitan Trust Co.,* 262 Mich. 123, wherein we held it beyond the powers of the trust company, and against public policy, for the company to engage in the sale of continuous series of mortgage participations as a regular business, and to issue its guarantee of payment as an inducement to purchasers. Petitioner is largely entitled to the credit for the institution of this litigation and its proper presentation to this court, which resulted in a denial of the claims. The decision further had the effect of defeating other claims, mostly for preference, amounting to $247,737.27. Petitioner alleges that he devoted 266.5 hours to the certified questions. He also offered testimony in the lower court which, although conjectural in character, was nevertheless uncontradicted, showing that he saved the estate at least $154,700 in cash through these services.

The value of petitioner's services in these matters is summed up by the trial court as follows:

"The court holds that the services rendered by Mr. Stevens in connection with each of these three matters, viz.: 'The State claim,' 'the liquidation plan,' and 'the certified questions' may properly be termed 'extraordinary' within the meaning of that term as used in the order of January 28, 1932; that no one of these matters was anticipated at that time; each involved unique, if not entirely novel, questions; the first and third necessitated intensive legal research and study, careful and original presentation; each involved large sums of money, vital consequences to the estate, and court appearances against able, experienced counsel (see list of opposing counsel referred to in *Reichert* v. *Metropolitan Trust Co.,* 262 Mich. 123). Mr. Stevens should be given especial credit for having conceived and developed the defense of *ultra vires* to the claim upon the guaranteed bonds, which defense was upheld

in its entirety by the Supreme Court. This case settled a question, apparently, of first impression in this country, and resulted in great monetary advantage to the estate. In the preparation and presentation of these three extraordinary matters, as in the ordinary and routine matters handled by him, Mr. Stevens contributed not only ability and industry, but a conscientious and zealous devotion to the interests of his clients, which entitled him to their complete approval and satisfaction, as well as to the gratitude and commendation of the court.''

The question of evaluating services and determining the fees of attorneys is a most difficult one. Canon No. 12, of the Canons of Professional Ethics adopted by the American Bar Association on August 27, 1902, provides as follows:

''In fixing fees, lawyers should avoid charges which overestimate their advice and services, as well as those which undervalue them. A client's ability to pay cannot justify a charge in excess of the value of the service, though his poverty may require a less charge, or even none at all. The reasonable requests of brother lawyers, and of their widows and orphans without ample means, should receive special and kindly consideration.

''In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other business while employed in the particular case or antagonisms with other clients; (3) the customary charges of the bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client

from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service.

"In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade."

Measuring petitioner's services by the rules laid down in this canon, we find, in the first place, no inability on the part of the trust estate to pay reasonable fees. The desire of the trial judge to hold down the expenses of administration is highly commendable, particularly in the case of a bank or trust company where the depositors and *cestuis que trustent* include estates, minors, etc. However, it must be remembered that the dividend eventually to be paid to creditors has been very materially increased through the extraordinary services of petitioner. Furthermore, there is no doubt but that a very large amount of time and labor was required of him and that he was confronted with many difficult questions, for some of which there was no precedent in this State. The determination of these problems required great skill and ingenuity. There is no showing that petitioner's retainer precluded his appearance in other litigation, or that it resulted in any loss of other business while he was employed in this particular work, or in any antagonism with other clients. It is shown, however, that the duties of the receivership took up his entire time for a considerable period, and it necessarily follows that he could not attend to other business during this time. The amount involved in the controversy and the benefit resulting to the client from his services are not inconsiderable, and ordinarily would justify

a large fee. Although the services performed were not on a contingent basis, and petitioner was assured of compensation, the court would have kept the fees at a very low figure had the result not been successful. On the other hand, while petitioner was not being employed by an established and constant client, he nevertheless had a retainer of a nature much prized and sought after and which was bringing him a fair return.

Canon No. 12, *supra,* makes no mention of the expenses incurred by an attorney in carrying out a retainer, as this may be a subject of special charge, to be considered by the court in fixing fees and expenses. Ordinarily, an attorney's office expense is absorbed in the charge for services. However, when he gives his entire time almost exclusively to a particular retainer for a considerable period, so that his office facilities are devoted in a large degree to such employment, and when no extra charge is made for disbursements, the cost of maintaining his office should be considered in fixing the fee. Office expenses, commonly termed overhead, absorb so large a part of the gross fees of a professional man that, when his entire time is given to one client, such expenses must be considered in fixing the compensation. Petitioner shows that during the time devoted by him exclusively to the duties of the receivership he paid out many thousands of dollars for office rent, stenographic services, stationery, telephone, books, etc., and asks that this be taken into consideration in the determination of fees. However, inasmuch as he accepted the order of the court allowing him $375 per month for all ordinary services, he cannot now claim additional compensation for disbursements except in connection with the extraordinary services during the period following this order.

In arriving at the sum of $6,000 for extraordinary services, the trial judge took into consideration the fact that petitioner was doing other legal work for the receivership on a "modest retainer basis." He was also impressed by the fact that petitioner failed to notify the court in advance that he expected to charge a much higher rate for extraordinary work performed. This omission would have been of greater significance had the result of petitioner's efforts been unsuccessful. The court stated that the fee charged for such services should be in reasonable proportion to the *per diem* or monthly rate set for general legal work. There is a distinction between ordinary legal work, largely routine in character, and extraordinary work of the nature performed by petitioner. We cannot overlook the expert testimony of six leading members of the bar, two of whom appraised the extraordinary services at $15,000 and upwards, another at $20,000, another at $20,000 and upwards, another from $20,000 to $25,000, and another at $25,000.

While, as a general rule, we are reluctant to disturb the findings of the trial court in the fixing of fees in receivership matters unless they are grossly exorbitant or inadequate, we believe that in this case, in view of our peculiar knowledge of the work done by petitioner, and classified by him as extraordinary services, his compensation should be increased from $6,000 to $10,000 in full for all services and expenses. The order will be amended to this extent and petitioner will recover costs.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.