388 So.2d 299 (1980)
J. Arthur HAWKESWORTH, Jr., Individually and E. James Schmick, Individually, and Hawkesworth & Schmick, a Partnership Organized for the Practice of Law in Dade County, Florida, Appellants,
v.
Ronald PONZOLI et al., Appellees.
No. 79-1173.
District Court of Appeal of Florida, Third District.
September 16, 1980.
Rehearing Denied October 20, 1980.
*300 Floyd, Pearson, Stewart, Richman, Greer & Weil and Ellen C. Freidin and Larry S. Stewart, Miami, for appellants.
Podhurst, Orseck & Parks and Joel D. Eaton, Miami, for appellees.
Before HENDRY, NESBITT and BASKIN, JJ.
PER CURIAM.
This is an appeal by defendants below from the final judgment entered in the Circuit Court for Dade County wherein the property rights of the parties were determined in a suit incident to the dissolution of their law firm. The dispute centers upon the expenses relating to appellants' prior relationships with other law firms. Appellees declared their unwillingness to pay for any part of appellants' earlier involvement in other law firms and sought relief.
In January, 1976, appellants Hawkesworth and Schmick promoted appellees Ponzoli and Wassenberg from associates to junior partners, and granted them a combined thirty-four percent interest in the assets of the new partnership. This latest partnership became a fourth legal entity, Hawkesworth, Schmick, Ponzoli & Wassenberg (hereinafter HSP & W) which co-existed in that office with the firms (newest to oldest) of Hawkesworth & Schmick, Hawkesworth, Kay & Schmick, and Hawkesworth & Kay. These (dissolved) firms were in various stages of "winding up", i.e., a resolution of the legal matters which constitute the assets of each partnership.
Upon the February, 1978 de facto dissolution of HSP & W, the latter two attorneys moved into new offices and commenced practicing under the firm name of Ponzoli & Wassenberg. In parting, they took with them two hundred files from the old firm. They have serviced them along with the files of Ponzoli & Wassenberg, without separate accounting procedures. Similarly, Hawkesworth and Schmick joined (again), became Hawkesworth & Schmick, and accumulated new files. However, under the split custody arrangement, they retained approximately three hundred files of HSP & W and have serviced them with their other files, which bear various names according to the firm which produced them.
When the former partners met for the first pooling of their assets and distribution of profits, a dispute arose, ultimately the object of this appeal, concerning the allocation of overhead[1] generated in the production of the partnership's post-dissolution income. Appellants wanted to apportion their total overhead expenses, as a deduction from the net sum attributable to each office engaged in the "winding up" process, based on the percentage of the firm's total income generated in each office.[2] Appellees, on the other hand, wanted each office to absorb its own overhead, and take its percentage of the unreduced combined fee *301 income.[3] The trial court opted for the latter alternative, possibly in light of the failure of both parties to keep records which would have disclosed the hourly expenditures made on files from which an overhead-per-file ratio could have been formulated.
Appellants complain that, by the court's adoption of appellees' formula, appellants are denied the sixty-six percent interest in the firm's income which they contracted for: Although they receive two-thirds of the pre-overhead income of the firm, they pay a disproportionately high share of the total overhead.
Unfortunately, appellants' proposal is as arbitrary as is appellees: They seek to extract from appellees' share of profits a reimbursement for overhead expenses of firms in which appellees have no financial interest. Such compensation to appellants would violate the requirement that partners of a dissolved law firm fulfill the partnership's obligations without additional compensation. Kreutzer v. Wallace, 342 So.2d 981 (Fla.3d DCA) cert. denied 353 So.2d 680 (Fla. 1977); Frates v. Nichols, 167 So.2d 77 (Fla.3d DCA 1964).
We affirm the result reached by the trial court, because, although it seemingly discriminates against appellants, it appears to reach an equitable result. The various firms being operated in appellants' offices share the same light and the same space as does HSP & W, and should share ratably in their cost. Moreover, relative inefficiencies (so-called "diseconomies of scale") which the smaller firms must suffer tend to depress the income-per-unit-of-overhead ratio enjoyed by HSP & W; appellants should bear this additional cost. Given the unwillingness of the parties to keep hourly timesheets by which to accurately apportion costs, we see no reason to disturb a result which seems as equitable as any more theoretically justifiable system we might fashion.
We have considered the other points on appeal, and find them to be without merit.
Affirmed.
NESBITT, Judge (dissenting):
I dissent. It is the general rule that, in a partnership dissolution, expenses incurred during the partnership must be reimbursed prior to distribution of net profits. § 620.745(1), Fla. Stat. (1979); § 620.755, Fla. Stat. (1979); Lichenstein v. Murphree, 9 Ala.App. 108, 62 So. 444 (1913); Casey v. Hurley, 115 Conn. 341, 161 A. 518 (1932); Geist v. Burnstine, 19 N.Y.S.2d 76 (Sup.Ct. 1940); Sandberg v. Scougale, 75 Wash. 313, 134 P. 1051 (1913); 68 C.J.S. Partnerships § 395.
It is equally well settled that, upon dissolution of a partnership where the partners have no dissolution agreement, the assets of the partnership are to be distributed according to the methods and ratios provided in the original agreement under which the parties operated prior to dissolution. Cohen v. Lansburgh, 366 So.2d 154, 156 (Fla.3d DCA 1979).
Applying these principles to the admitted facts makes it apparent that the appellees have obtained a windfall in the name of equity. The failure of parties to keep time records may make the rendering of an accounting more difficult, but it does not render it impossible. When men of affairs make a bargain, they should abide by it absent extraordinary or compelling reasons which are not presented here.
I cannot agree that "the other points on appeal" are without merit. Although the amount of money involved is miniscule, the failure to award proper credit for fixed assets is contrary to the manifest weight of the evidence. Moreover, the failure to award Hawkesworth personal credit for personal loans made by him is contrary to the undisputed evidence.
NOTES
[1] Costs directly traceable to particular files are not at issue; these are deducted from the income each file is said to produce. Rather, the issue relates to indirectly attributable (nontraceable) expenses, such as office salaries, rent, and library costs.
[2] That is, if Hawkesworth and Schmick generated $70,000 of the $100,000 (hypothetical) income produced by the firm, they would deduct seventy percent of their total office overhead from that figure, to arrive at a "net" figure, of which, combined with the net figure similarly obtained in the Ponzoli-Wassenberg operation, Hawkesworth and Schmick would take sixty-six percent, under the terms of the partnership agreement.
[3] Appellees' overhead is roughly one-eighth that of appellants, on a per-case basis.