**Joseph W. HAMMES, and Henry Y. Dein, Appellants–Plaintiffs,**

v.

**Steven H. FRANK and Claude R. Magnuson, Appellees–Defendants.**

**No. 41A01–9010–CV–406.**

Court of Appeals of Indiana, First District.

Oct. 24, 1991.

Transfer Dismissed Nov. 21, 1991.

James R. Fisher, Ice, Miller, Donadio & Ryan, Indianapolis, for appellants-plaintiffs.

James F.T. Sargent, Sargent & Meier, Greenwood, for appellees-defendants.

BAKER, Judge.

This appeal arises from the dissolution of an Indianapolis law partnership. Plaintiff-appellants Joseph Hammes and Henry Dein appeal as inadequate a judgment rendered in their favor following an accounting. They raise four issues on appeal, restated as:

I. Whether the trial court erred in its calculation of Frank's overhead.

II. Whether the trial court erred in its treatment of Magnuson's forfeited share.

III. Whether the trial court erred in its distribution of certain class action attorney fees.

IV. Whether the trial court erred in refusing to award prejudgment interest on certain awards.

Additionally, on cross-appeal, defendant-appellees Steve Frank and Claude Magnuson[1] raise three issues:

V. Whether class action fees are subject to accounting.

VI. Whether Dein's and Hammes's claims are equitably barred by their failure to request an accounting.

VII. Whether Dein and Hammes are estopped from collecting any amounts owed them because they breached their wind-up duties.

We affirm in part, reverse in part, and remand with instructions.

### FACTS

On January 13, 1984, the law partnership of Magnuson, Dein & Hammes dissolved. At that time, the only partners were the four parties to this appeal. Following dissolution, these four partners divided into two successor firms, Magnuson & Frank and Dein, Hammes, Stanley & Ripley. Stanley and Ripley were two associates from the Magnuson, Dein & Hammes partnership.

Because there was no written agreement regarding a post-breakup distribution of assets, the two firms and four partners engaged in extensive negotiations over a long period of time in an effort to resolve the unfinished business matters of Magnuson, Dein & Hammes. Ultimately, the partners were unable to reach an agreement concluding the rights and obligations of the successor firms or the individuals. One of the most hotly contested issues regarded the distribution of large class action fees Steve Frank was largely responsible for generating.

On July 12, 1990, the trial court held a hearing to account for the undistributed Magnuson, Dein & Hammes income. At that hearing, Frank, Dein, and Hammes presented expert testimony on their own income and expenses in generating that income, and each presented evidence of the others' income and expenses. Magnuson took no part in the proceeding.

On September 11, 1990, the court entered its findings and conclusions. It rejected Frank's accounting because it "list[s] so many variables it covers the issue with confusion." *Record* at 1013 (Findings, Conclusions and Judgment ¶ 1). As for Dein's and Hammes's accounting, the court concluded:

> [Dein's and Hammes's] accounting is more factually accurate except in overhead. [Dein's and Hammes's] accounting shows Frank's overhead equal or less than Hammes/Dein combined yet Frank guaranteed three (3) to four (4) times more income. This is not reasonable. Even though excessive, Frank's figures are more reasonable.

*Record* at 1013, ¶ 2. The court accepted

---

**1.** Although Claude Magnuson is a named appellee, none of the issues presented affect him personally. Instead, the dispute Joseph Hammes and Henry Dein have is primarily with Steve Frank. Accordingly, for clarity, we will refer to appellees in the singular as "Frank."

Dein's and Hammes's accounting,[2] but determined Frank's overhead expense in generating Magnuson, Dein & Hammes fees to be $227,948.00, as Frank's expert concluded, rather than $73,768.27, as Dein's and Hammes's expert proposed.

The trial court then found Frank's net fees (gross fees less overhead expenses) received from the day of dissolution to the day of accounting equalled $559,097.11, Dein's equalled $51,924.94, and Hammes's equalled $25,599.00. The sum of these net fees was found to be $636.621.76.[3] Each partner was entitled to one-fourth, or $159,-155.44.[4]

By subtracting Dein's and Hammes's net fees from this amount, Frank was found to owe Dein $107,230.50 and to owe Hammes $133,555.73. Judgment was entered against Frank and in favor of Dein and Hammes for these two amounts. This appeal ensued.

### Issue I: Frank's Overhead

Dein and Hammes first contend the trial court's calculation of Frank's overhead figure as $227,948.00 was unreasonable and unsupported by the evidence. Relying on ¶ 2 of the trial court's Findings, Conclusions and Judgment, they insist the court improperly considered Frank's disproportionate fee income in its determination of his overhead. They argue fee income is irrelevant to the calculation of overhead because overhead expenses in a law firm are relatively constant. They also argue the trial court recognized Frank's figure was unreasonable, because the trial court termed Frank's figures "excessive." *Record* at 1013. As excessive, the trial

2. Specifically, the trial court accepted the following figures, which represent income generated from and overhead attributable to Magnuson, Dein & Hammes files open as of the day of dissolution, January 13, 1984:

| Partner | 1984 | 1985 | 1986 | 1987 | 1988 | Total |
|---|---|---|---|---|---|---|
| **Dein** | | | | | | |
| Fees Rec'd | 73,370.58 | 26,841.50 | 2,772.65 | 1,283.00 | 0.00 | 104,267.73 |
| Overhead | 38,034.45 | 14,308.34 | 0.00 | 0.00 | 0.00 | 53,342.79 |
| Net Fees Rec'd | 35,336.13 | 12,533.16 | 2,772.65 | 1,283.00 | 0.00 | 51,924.94 |
| **Hammes** | | | | | | |
| Fees Rec'd | 44,428.60 | 1,633.50 | 3,189.65 | 250.00 | 0.00 | 49,501.75 |
| Overhead | 23,031.27 | 870.77 | 0.00 | 0.00 | 0.00 | 23,902.04 |
| Net Fees Rec'd | 21,397.33 | 762.73 | 3,189.65 | 250.00 | 0.00 | 25,599.71 |
| **Frank** | | | | | | |
| Fees Rec'd | 72,472.66 | 23,909.23 | 536,821.42 | 13,672.89 | 140,168.91 | 787,045.11 |
| Overhead | 19,074.96 | 14,638.55 | 19,311.82 | 7,540.31 | 13,202.62 | 73,768.27 |
| Net Fees Rec'd | 53,397.70 | 9,270.68 | 517,509.60 | 6,132.58 | 126,966.29 | 713,276.84 |

*Record* at 2246.

3. Actually, the sum of these figures is $636,-621.05. The 71¢ discrepancy is easily traceable. In its Findings, Conclusions and Judgment (*Record* at 1013), the trial court, in ¶ 3, specifically adopted the findings of Dein's and Hammes's expert witness as found in their Accounting Exhibit 1. Accounting Exhibit 1 lists Hammes's 1984–1988 net earnings as $25,-599.71. *Record* at 2244. The trial court's Findings, Conclusions and Judgment, in ¶ 8, however, lists Hammes's income as $25,599.00.

4. Claude Magnuson failed to meet his post-dissolution partnership obligations by failing to complete the "wrap-up" of Magnuson, Dein & Hammes files and by failing to identify and account for the fee income he received or should have received from the handling of those matters to their conclusion. *Record* at 1014 (Findings, Conclusions and Judgment ¶ 11). Therefore, the trial court ruled, he forfeited his one-quarter share of the distributable Magnuson, Dein & Hammes fee income. *Record* at 1014, ¶ 12. Exactly who gets that one-quarter share is one of the issues before us on appeal.

court was bound to disregard them, regardless of what the trial court thought of Dein's and Hammes's own figures, they claim.

■■■ Upon dissolution of a partnership and "prior to the distribution of any profits, each partner is entitled to be reimbursed for the reasonable and necessary overhead expenses attributable to winding up the partnership's business." *Ellerby v. Spiezer* (1985), Ill.App., 485 N.E.2d 413, 417. What constitutes "overhead" for the purposes of the wrap-up of a dissolved partnership, however, is unsettled in this jurisdiction[5] and elsewhere. The Uniform Partnership Act[6] offers no definition. THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 936 (1970) defines "overhead" as "[t]he operating expenses of a business, including the costs of rent, utilities, interior decoration, and taxes, and excluding labor and materials," and BLACK'S LAW DICTIONARY 1257 (4th ed. 1968) defines it as the "[c]ontinuous expenses of a business: the expenses and obligations incurred in connection with operation." At least one jurisdiction excludes from its definition of overhead those expenses indirectly attributable to the winding up of partnership business. Thus, office salaries, rent, and library costs have been denied to partners who sought their reimbursement as overhead. *Hawkesworth v. Ponzoli* (1980), Fla.App., 388 So.2d 299, 301. Other jurisdictions, however, allow indirect expenses in the calculation of overhead, reasoning that such an approach is fairer when, as here, one partner incurs a disproportionate amount during wind-up. *Jewel v. Boxer* (1984), 156 Cal.App.3d 171, 180, 203 Cal.Rptr. 13, 19.

■■■ Here, Frank seeks to include the cost of paralegals, associate attorneys, and computer time within the ambit of "overhead." We think this is proper, particularly in the context of protracted class action suits. We agree with the trial court's determination that given the complex and sophisticated nature of class action litigation in today's legal arena, the costs of paralegals, associate attorneys, and computer time are reasonable and necessary expenses. We believe the reasoning of *Reichert v. Metropolitan Trust Co.* (1934), 266 Mich. 322, 253 N.W. 313, in which the court discussed computing overhead for the purposes of fixing an attorney's fee, applies analogously: "[w]hen [an attorney] gives his entire time almost exclusively to a particular retainer for a considerable period, so that his office facilities are devoted in a large degree to such employment, ... the cost of maintaining his office should be considered in fixing his fee." Here, the evidence supports the finding that Steve Frank worked for several years on class action litigation, concentrating on little else, and that he incurred substantial expense in doing so. The court did not err in including these expenses in Frank's overhead computation.

■■■ We agree with Frank that in essence Dein and Hammes are appealing a negative judgment. Each side submitted conflicting overhead figures to the trial court; the trial court rejected Dein's and Hammes's and adopted Frank's. Upon review of a negative judgment, we will reverse only if the evidence is without conflict, and all reasonable inferences to be drawn from the evidence lead to but one conclusion and the trial court has reached a different conclusion. *Williams v. City of Indianapolis* (1990), Ind.App., 558 N.E.2d 884, 888, *trans. denied*. The specific findings and conclusions of the trial court will be affirmed unless clearly erroneous, and we will neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.*

■■■ Here, substantial evidence of probative value supports the trial court's finding that Frank's overhead in wrapping-up Magnuson, Dein & Hammes files amounted to $227,948.00. Steve Frank's expert witness, Michael Swan, a certified public accountant, prepared a thorough report on the wrap-up activities of the Magnuson, Dein &

---

**5.** We therefore have looked to holdings from our sister states for guidance on this issue and others.

**6.** IND.CODE 23–4–1–1 *et seq.*

Hammes partners. *See Record* at 2390. The evidence regarding Frank's overhead presented to the trial court was in conflict; the trial court, in its judgment, found Swan's figure of $227,948.00 to be more credible. Based on our examination of the report Swan prepared and the testimony he gave at trial, we cannot say the trial court's finding is clearly erroneous.

■ Neither are we concerned with the trial court's characterization of that amount as "excessive." Dein and Hammes submit that in this case "excessive" is synonymous with "unreasonable." We do not agree. Although we do not know exactly what the trial court meant by "excessive," we do know the trial court also characterized the $227,948.00 overhead figure as "more reasonable" than the $73,768.27 figure proposed by Dein and Hammes. The judgment of the trial court comes to us with a presumption of correctness. *Myers v. Myers* (1990), Ind., 560 N.E.2d 39. We trust the trial court would not adopt as a final finding of fact a figure it felt was unreasonable and unwarranted; therefore, Dein's and Hammes's interpretation fails. We note, finally, the ratio of overhead expenses to total income for Dein and Hammes is approximately 50–50. For Frank, this ratio is approximately 35–65. The court in *In re Estate of Barbera* (1973), Ill., 302 N.E.2d 302 approved as reasonable a ratio of almost 60–40. The trial court's finding is reasonable and supported by evidence; we will not disturb it.

### Issue II: Magnuson's Share

For reasons not revealed in the record, Claude Magnuson failed in his wrap up duties surrounding the dissolution of Magnuson, Dein & Hammes. As a result, the trial court ruled Magnuson forfeited his one-quarter interest in the partnership fee income. No party to this action has appealed this determination. What is in dispute, however, is the trial court's ruling that Magnuson's forfeited share would be given to the firm of Magnuson & Frank rather than be split equally among Dein, Hammes, and Frank.

Dein and Hammes assert that income generated by Magnuson, Dein & Hammes files belongs to the partnership of Magnuson, Dein & Hammes; as partnership income, it is subject to division among those partners entitled to a share of the income, in this case Dein, Hammes, and Frank. They also rely on principles of equity to advance their position: Frank, as a wrongdoer, ought not benefit from his own wrongdoing. Dein and Hammes characterize Frank as a "wrongdoer" because Frank refused to deliver funds he held in trust for the partnership to the partnership in a timely fashion. Additionally, between January 1984, and April 1985, when Magnuson & Frank and Dein, Hammes, Stanley & Ripley shared office space, Magnuson & Frank defaulted on leases for furniture and office equipment, forcing Dein and Hammes, who were jointly obligated, to incur substantial expense. This "wreaked financial havoc on Hammes's and Dein's continuing efforts to practice law." *Appellants' Reply Brief and Response to Cross-Appeal* at 10. Dein and Hammes argue that by its judgment, the trial court allowed Frank to be unjustly enriched at their expense.

■ The general rule is that breach of a partnership agreement does not lead to forfeiture of a partner's interest. *B.K.K. Company v. Schultz* (1970), 7 Cal.App.3d 786, 86 Cal.Rptr. 760; *Walsh v. Atlantic Research Associates, Inc.* (1947), 321 Mass. 57, 71 N.E.2d 580; *Dobson v. Dobson* (1980), Tx.Civ.App., 594 S.W.2d 177. Forfeiture is simply too harsh a remedy; an award of damages is more appropriate. There is a small handful of reported cases upholding forfeiture; invariably these involve severe breaches which subsequently led to dissolution of the partnership. *See, e.g., Middleton v. Newport* (1936), 6 Cal.2d 57, 56 P.2d 508; *Lee v. Dahlin* (1960), 399 Pa. 50, 159 A.2d 679; *Saletic v. Stamnes* (1958), 51 Wash.2d 696, 321 P.2d 547. All three of these cases, however, are distinct from the present case, and involve situations in which either the misbehaving partner's request for reimbursement was held forfeited or in which it was the right to an accounting that was forfeited. To our

knowledge, there is no reported case addressing a situation in which a partner, by breach of his wrap-up duties, forfeited partnership profits to which he was otherwise entitled.

But the issue of whether, under these particular circumstances, Magnuson's forfeiture was proper is not before us. Claude Magnuson has not appealed his loss. We must decide whether the trial court acted permissibly in giving Magnuson's forfeited share to the firm of Magnuson & Frank. We hold it did.

▮▮▮▮ An accounting is a suit in equity governed by equitable principles and addressed to the sound discretion of the trial court. *Block v. Lea* (1984), 5 Haw.App. 266, 688 P.2d 724, *cert. denied* 67 Haw. 685, 744 P.2d 781. The trial court has full discretion to fashion equitable remedies that are complete and fair to all parties involved. *Anacomp, Inc. v. Wright* (1983), Ind.App., 449 N.E.2d 610. On review, Trial Rule 52(A) permits us to set aside findings and judgments only upon a showing of clear error, all the while considering the opportunity of the trial court to judge the credibility of the witnesses.

▮▮▮▮ We hold the decision of the trial court to award Magnuson's forfeited share to the firm of Magnuson & Frank was within the sound discretion of the trial court and was not clearly erroneous. Dein and Hammes are correct when they state partnership income is subject to distribution among the partners entitled to receive it. They seem to forget, however, that this is exactly what happened. Each partner, including Claude Magnuson, was entitled to a total of exactly $159,155.44, and each partner, including Henry Dein and Joseph Hammes, received exactly that amount. When a partnership is dissolved by the consent of the partners and when partnership assets are divided among them, the property allotted to each becomes his separate property, and the others have no lien or equity in it. *Reynolds v. Roberts* (1925), 119 Kan. 281, 237 P. 931; *Burk v. Burk* (1910), 128 S.W. 315; *Jackson Bank v. Durfey* (1895), 72 Miss. 971, 18 So. 456. Dein and Hammes both have received their

one-quarter share. After the initial division was made and Dein and Hammes had no additional rights to further distributions, the trial court used its discretion in allocating Magnuson's forfeited share to the firm of Magnuson & Frank. There was no error.

### Issue III: Hamilton Brothers/Maibens Fee

In 1979, while Frank was an associate at Magnuson, Dein & Hammes, he began work on a class action suit involving a contested fuel tax levied by the State of Indiana. This file was called *Hamilton Brothers*. The case eventually came before this court, which, in an unpublished pre-appeal order, determined the lead plaintiff, Hamilton Brothers Inc., was no longer being improperly taxed by the state. In a March 1985 Agreed Entry, the parties agreed that another business, Maibens, Inc., was a proper party to represent the class. In November of 1985, 22 months after the dissolution of Magnuson, Dein & Hammes, Frank received a substantial attorney fee award for his work on *Maibens*. The former partners could not agree on the distribution of this award among themselves, and placed the issue before the trial court.

The trial court held:

11. The fee generated by *"Hamilton Brothers"* of more than $225,000.00 was received by Magnuson, Dein & Hammes in 1982. An appeal ensued and the Indiana Court of Appeals rendered the Hamilton Brothers claim moot because the company was no longer being taxed by the statute which had given rise to the suit.

12. The subsequent *"Maibens"* case is considered a renewal but was initiated after the dissolution of Magnuson, Dein & Hammes is to be considered a seperate (sic) action from *"Hamilton Brothers."* As such, it is not to be included in the accounting.

*Record* at 870. Dein and Hammes argue that as a matter of fact and law, *Maibens* was merely a continuation of *Hamilton Brothers* and not new and separate action,

and therefore should have been included in the accounting.

▪▪▪ Before discussing this particular issue, however, we observe that under the Uniform Partnership Act, a dissolved partnership is not terminated until the winding up of unfinished partnership business is completed. IND.CODE 23-4-1-30. Absent agreement, no partner except a surviving partner is entitled to remuneration for acting in the partnership business. IND. CODE 23-4-1-18. "Partnership business" includes winding up activity caused by dissolution. *Jewel, supra,* 156 Cal.App.3d at 176, 203 Cal.Rptr. 13. Thus, in the absence of a contrary agreement, income produced by the winding up of unfinished partnership business is distributed to the former partners in proportion to their respective shares. *Id.*

▪▪▪ We disagree with the trial court's conclusion that *Maibens* was a separate case from *Hamilton Brothers* for the purposes of accounting. The essence of each is nearly identical, Frank's protestations nothwithstanding. We agree with Dein and Hammes that a substitution of a class representative due to mootness of the representative's claim does not create a separate action. *United States Parole Commission v. Geraghty* (1980), 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479; *Sosna v. Iowa* (1975), 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532. We also agree the mere absence of an attorney-client relationship between a class member and the attorney representing the class does not cause the pending class action to become a new action once the member is substituted as the class representative. *See Jewel, supra.*

The facts, too, as well as the law, indicate *Maibens* was merely a continuation of *Hamilton Brothers.* The cause number remained the same. No new complaint was filed. When this court ordered the trial court to redefine the class in 1984, we specifically retained jurisdiction. *Record* at 1868. It is clear the class action trial court considered *Maibens* a continuation because its 1985 order awarding class attorney fees specifically recognized the substantial time Frank expended on the case

from 1979 to 1985. *Record* at 1853–56. Had they been separate, it would have been improper for the class action trial court to attribute to *Maibens* time spent by the attorneys for conferences, hearings, and appeal on *Hamilton Brothers* matters.

We hold the trial court's finding that *Maibens* was separate from *Hamilton Brothers* to be unsupported by the evidence and clearly erroneous. But there remains an issue as to whether Frank's post-dissolution work on his class action litigation is "unfinished business." If it is unfinished business, the fee is to be split among the partners; if it is not, the former partnership can have no claim to the fee. *Jewel, supra.*

▪▪▪ In determining whether business is unfinished, courts must look to the circumstances existing on the date of the dissolution of the partnership, not to events occurring thereafter. *Id.,* 156 Cal.App.3d at 178, 203 Cal.Rptr. 13. As of January 13, 1984, the day of dissolution, Steve Frank had already worked for nearly five years on the class action file. He had received a portion of the fee, and as a partner was required to share the fee with Magnuson, Dein & Hammes, because it was a Magnuson, Dein & Hammes file. But on January 13, 1984, the class action litigation was not completed, and would not be resolved until May 16, 1985, when it was settled. Although the class action underwent a name change, it remained the same action for purposes of the accounting. It is therefore evident that as of the day of dissolution, *Hamilton Brothers/Maibens* was unfinished business. Furthermore, it was unfinished Magnuson, Dein & Hammes business.

We remand on this issue with instructions for the trial court to include fees generated by *Maibens* in Frank's net fees, and re-account accordingly.

### Issue IV: Prejudgment Interest

The trial court ruled "[p]rejudgment interest is not awarded on [Dein's $107,-230.50 judgment and Hammes's $133,-555.73 judgment] due to the obvious inability on all parts to ascertain what was the

sum certain." *Record* at 1014 (Findings, Conclusions and Judgment ¶ 9). Dein and Hammes argue this ruling is clearly erroneous because the amount of principal is readily ascertainable, given that fees generated by the partners were received on specific dates in specific amounts. They contend the Indiana test for the award of prejudgment interest is "not whether the parties have mutually fixed the amount in dispute; rather, the question is whether the principal amount is ascertainable by mere computation." *Courtesy Enterprises, Inc. v. Richards Labs* (1983), Ind.App., 457 N.E.2d 572, 580, (quoting *Southern School Bldgs. v. Loew Electric, Inc.* (1980), Ind.App., 407 N.E.2d 240, 250, *trans. denied* ).[7]

■■■■■ "The crucial factor in determining whether damages in the form of prejudgment interest are allowable is whether the damages were ascertainable in accordance with fixed rules of evidence and accepted standards of valuation." *Courtesy Enterprises, supra,* at 580 (citing *Indiana Industries, Inc., v. Wedge Products, Inc.* (1982), Ind.App., 430 N.E.2d 419, 427, and *Blue Valley Turf Farms v. Realestate Marketing* (1981), Ind.App., 424 N.E.2d 1088, 1091). "When the trier of fact determines liability for damages exists, prejudgment interest is proper only where a simple mathematical computation is required. . . ." *Thomas J. Henderson, Inc., v. Leibowitz* (1986), Ind.App., 490 N.E.2d 396, 400 (no error in failing to award prejudgment interest when damages not readily ascertainable in the face of the competing claims of time-and-materials contract versus contract cap, and charges for extra work versus claims the work was incomplete).

■■■ The trial court found that since January 13, 1984, the day of dissolution, numerous fees were collected on many different dates, with each fee received subject to overhead offset and other expenses before distribution to the partners. The find-ing that damages are not readily ascertainable by mere computation in this case is supported by the evidence; the trial court's decision denying prejudgment interest was appropriate.

## CROSS–APPEAL

### Issue V: Class Action Attorney Fees

■■■ Frank's first issue on cross-appeal is whether class action attorney fees awarded pursuant to Ind.Trial Rule 23(D) are properly subject to an accounting in a partnership dissolution case.

Frank insists they are not because, he asserts, there is no right to a T.R. 23(D) attorney fee until that fee is ordered by the court with jurisdiction over the class action. Therefore, if a class action fee award has not been ordered prior to dissolution, there is no property right of the law partnership in such an award at the time of dissolution. This, he says, is very different from a contingency fee situation, in which the right exists at the time of contract, although the extent of that right is unknown until the contingencies have occurred. Here, Frank argues, there has not been a showing of any contractual relationship between Dein and Hammes and the certified class members in the various class actions. Without a present right to a future fee, he suggests, the interest of the dissolved partnership is limited to the *quantum meruit* value of services performed for the client or the class while the partnership was in existence.

In addition, Frank claims, Dein and Hammes were aware of the pendency of the class litigation Frank was performing and had ample opportunity to apply to the court with jurisdiction over the class fund for fees. Because they chose not to do so, "it would be improper to allow the court with jurisdiction over the accounting proceedings to interpose its authority in effectively ordering fees to be paid from a com-

---

7. In reply, Frank advances an elaborate argument to the effect that the 1988 amendment to IND.CODE 24–4.6–1–101 overruled existing common law on the awarding of prejudgment interest, and that consequently Dein and Hammes are barred from the recovery of pre-judgment interest for that reason. We reject this argument, noting simply IND.CODE 24–4.6–1–101 applies to interest on judgments only, not to prejudgment interest awards. *Nehi Beverage Co., Inc. v. Petri* (1989), Ind.App., 537 N.E.2d 78, 84, *trans. denied.*

mon fund to counsel who did not participate or at best participated marginally in the conduct of the litigation which gave rise to the fund." *Appellees' Brief* at 45.

We do not agree. Frank obfuscates the issue. Dein's and Hammes's only interest in the fees awarded lay in the distribution of those fees after the award was made. This interest is separate from and does not impinge upon any rights of the class members. Once the fee is paid, it is of no consequence to the client or the court how it is allocated among present or former partners. *Jewel, supra,* 156 Cal.App.3d at 178, 203 Cal.Rptr. 13. Moreover, it would have been improper for Dein and Hammes to apply to the class action court for fees in addition to Frank's because their interests were derivative of Frank's. Here, Frank's services were rendered to the partnership in return for a share of the partnership's profit, and Frank is entitled to no other compensation. *See Boushehry v. Ishak* (1990), Ind.App., 560 N.E.2d 116 (absent previous agreement, partner not entitled to *quantum meruit* for services rendered). The trial court did not err in including in its accounting the class action fees generated by Frank.

### Issue VI: Estoppel

Frank next argues Dein's and Hammes's claims are barred by equitable principles of estoppel, because for at least 30 months after dissolution, Dein and Hammes neither demanded nor offered an accounting of the old files taken by the former partners.

Estoppel may occur when one party's conduct leads another to believe that a right will not be enforced and thus causes the one misled to act to his detriment. *Glaser v. Indiana State Dept. of Public Welfare* (1987), Ind.App., 512 N.E.2d 1128, 1130, *trans. denied.* The elements of estoppel under Indiana law are (1) a representation or concealment of material facts; (2) the representation must be made with the knowledge of the facts; (3) the party to whom it is made must be ignorant of the matter; (4) it must be made with the intent that the other party should act on it; and (5) the other party must be induced to

act upon it to his detriment. *Matter of Estate of Lawrence* (1991), Ind.App., 565 N.E.2d 357, 359.

The record here amply discloses that some of Dein's and Hammes' conduct was, in fact, consistent with the winding-up and accounting of partnership business. The questions of class action fees and residue income from the partnership were raised (but not resolved) in a February, 1984, meeting between Frank, Dein, and Hammes, and memorialized in a memorandum. *Record* at 1193–97. For a short period, a post-dissolution bank account was created and used for post-dissolution fees and expenses. *Record* at 1173–78. In early 1985, Dein and Hammes submitted accountings of fee receipts for some Magnuson, Dein & Hammes files to Magnuson and Frank. *Record* at 1276. In April, 1985, and again in early 1986, Frank acknowledged communications with Dein and Hammes regarding unpaid debts. *Record* at 2152, 2160.

Having shown no representation, no ignorance, and no detrimental reliance, Frank has not proven a defense of estoppel.

### Issue VII: Wind Up

Finally, Frank argues Dein's and Hammes's claims are barred because Dein and Hammes breached their duty to participate in the wind-up of the partnership business.

Dein and Hammes did contribute meaningfully to the conclusion of the firm's business. As noted previously the evidence shows that a bank account was created and contributed to for wrap-up files, albeit for a relatively short period. There is evidence Dein and Hammes submitted an accounting of at least some of the outstanding Magnuson, Dein & Hammes files. There is also evidence that upon dissolution Frank took his files with him, thus denying Dein and Hammes access to those files and consequently the opportunity to wrap them up. There is no evidence in the record indicating Dein and Hammes ultimately failed to account for those files under their control.

In short, it is more than evident that both sides to this acrimonious dispute were less

than willing to share the fees each received from Magnuson, Dein & Hammes files with the other. Absent substantial probative evidence of a failure by Dein and Hammes to fulfill their wind-up duties, and noting each side's (mis)behavior was substantially similar, we will not consider Frank's request to void the judgment originally rendered in Dein's and Hammes's favor based solely on an unproven breach of wind-up duties.

### Conclusion

We affirm in part, reverse in part, and remand to the trial court with instructions to include Frank's net fees from *Maibens* in the accounting, and to recalculate and redistribute that income consistently with this opinion and the remainder of its original judgment.

RATLIFF, C.J., and ROBERTSON, J., concur.

