## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 26 2017, 6:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jay P. Kennedy
Steven E. Runyan
Kroger, Gardis & Regas, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Ryan M. Spahr
Spahr Law Office, LLC
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mobile Home Management Indiana, LLC, | January 26, 2017 |
| *Appellant-Defendant/Counterclaim and Cross-Claim Plaintiff,* | Court of Appeals Case No. 32A01-1602-MI-199 |
| v. | Consolidated Appeal from the Hendricks Superior Court |
| Avon Village MHP, LLC, | The Honorable Stephenie D. LeMay-Luken, Judge |
| *Appellee-Plaintiff/Counterclaim and Cross-Claim Defendant,* | Trial Court Cause Nos. 32D05-1308-MI-171 and 32D05-1402-PL-9 |
| and | |
| State of Indiana Bureau of Motor Vehicles and Treasurer of Hendricks County Indiana, | |
| *Nominal Defendants* | |

**Crone, Judge.**

# Case Summary

[1] Following a bench trial, Mobile Home Management Indiana, LLC ("MHMI"), appeals the trial court's judgments awarding it a total of $5322 against Avon Village MHP, LLC ("New Avon"), in relation to a dispute over twenty mobile homes. MHMI contends that the trial court erred in not awarding it relief under theories of tortious conversion, unjust enrichment, and constructive trust and in not awarding it prejudgment interest. Finding no error, we affirm.

# Facts and Procedural History[1]

[2] New Avon correctly observes that "[t]he facts of this case are messy and complicated." Appellee's Br. at 37. What follows is a recitation of the relevant facts most favorable to the trial court's judgments based on the court's numerous findings, few of which are specifically challenged by MHMI.

[3] Avon Home Leasing, LLC, and several related entities (collectively "Old Avon") owned mobile homes (or "Units") in a mobile home park ("the Park") that also was owned by Old Avon. In October 2010, a mortgage foreclosure

---

[1] We remind MHMI that an appellant's statement of facts "should be a concise narrative of the facts stated in the light most favorable to the judgment and should not be argumentative." *Ruse v. Bleeke*, 914 N.E.2d 1, 5 n.1 (Ind. Ct. App. 2009). Also, we remind both parties that exhibits are considered part of the transcript pursuant to Indiana Appellate Rule 2(K) and therefore should not be reproduced in an appendix pursuant to Indiana Appellate Rule 50(F). And finally, we remind both parties that citations must appear within the document's text and not in footnotes pursuant to Indiana Appellate Rule 22. *Ind. Dep't of Transp. v. Sadler*, 33 N.E.3d 1187, 1189 n.3 (Ind. Ct. App. 2015).

action was filed against Old Avon, and a receiver was appointed the following month. During the receivership, the receiver collected home rents (which normally are paid to the owner of the mobile home) and lot rents (which normally are paid to the owner of the lot) on the twenty Units that are the focus of this litigation. In May 2011, a final judgment and decree of foreclosure was issued, pursuant to which the Park's real estate was sold at sheriff's sale to Special Services Asset Management Company ("Special Services"). The foreclosure did not affect Old Avon's ownership of the Units. In November 2011, the receivership was terminated. Thereafter, Special Services collected home rents and lot rents on the twenty Units. Old Avon was not paying taxes on those Units.

[4] In December 2011, Special Services sold the Park's real estate to New Avon. As part of the transaction, Special Services assigned to New Avon its interest in a security agreement in Old Avon's accounts with respect to the twenty Units. At the time of the purchase, Old Avon was delinquent in lot rent payments by over $14,000. That delinquency, which continued to increase, was assigned to New Avon as part of the purchase. After the sale, New Avon collected home rents and lot rents on all twenty Units, just as its predecessors had done. New Avon also paid taxes on the Units.

[5] Based on the receiver's and Special Services' actions as well as Old Avon's inactions, New Avon reasonably believed that Old Avon had abandoned the twenty Units and took steps to acquire them through the statutory abandoned mobile home process under Indiana Code Chapter 9-22-1.5. New Avon

searched Bureau of Motor Vehicles ("BMV") records for the last known address for the owner of each of the Units. New Avon was unable to complete the process for three of the Units because the BMV did not have records related to the VIN numbers. Instead of allowing those Units to deteriorate or disposing of them without the protection of the statutory process, New Avon ultimately repaired and renovated them to protect the Park and the interests of the Units' owners. New Avon did not receive any communication from Old Avon about those Units.

[6] In May 2012, pursuant to statute, New Avon sent first notices via certified mail to Old Avon regarding the remaining seventeen Units, informing it that the Units would be considered abandoned and subject to sale if the Units were not removed within thirty days of the date of the notices. The notices were received and signed for by Old Avon's principal, Sam Misuraca. In June 2012, New Avon mailed second notices to the same addresses informing Old Avon that if the Units were not removed by June 28 they would be advertised for sale and sold at public auction. The second notices were returned as undeliverable. Some of the BMV searches on the Units turned up a second mailing address, and New Avon sent first and second notices to that address as well. The first notices were returned as undeliverable, and the second notices were received and signed for. Advertisements for the auction were published twice in a local newspaper. New Avon did not receive any communication from Old Avon. An auction was conducted on July 9, 2012, and New Avon acquired all seventeen Units. After the auction, New Avon reasonably believed that it was

the owner of the Units and prepared an affidavit of sale or disposal for each of the Units.

[7] In June 2013, New Avon's principal, Douglas Pelton, informed MHMI's principal, Bob Miller, that he had completed the abandoned home process on the seventeen Units and claimed ownership. On July 15, 2013, MHMI purchased the twenty Units from Old Avon for a total of $14,285. In the purchase agreement, Old Avon represented that it had not had possession of the twenty Units since 2010 and was not aware of any claims against them, but would not warrant against the existence of other claims. To the contrary, Old Avon was on notice of New Avon's claims against the seventeen Units and the abandonment process undertaken by New Avon based on its receipt of notices from New Avon. The bills of sale contained a covenant that each of the Units "was free from all liens, claims and encumbrances and that Old Avon would defend the same against the lawful claims and demands of all persons." Appellant's App. at 31.

[8] In August 2013, under cause number 32D05-1308-MI-171 ("the MI cause"), New Avon filed a complaint against MHMI asking the court to "enter a declaratory judgment declaring [New Avon] as the rightful owner" of the seventeen Units that had been sold at auction. *Id*. at 64. MHMI filed a counterclaim against New Avon and requested a declaratory judgment in its favor, an order directing New Avon to surrender the Units, and an accounting and judgment against New Avon for rents that had not been paid to Old Avon

or MHMI, as well as prejudgment interest.[2] In October 2013, the parties "filed cross-motions for summary judgment as to who was the rightful owner" of the Units. *Mobile Home Mgmt. Ind., LLC v. Avon Vill. MHP, LLC*, 17 N.E.3d 275, 278 (Ind. Ct. App. 2014), *trans. denied* (2015). In December 2013, the trial court granted New Avon's motion and denied MHMI's motion. In January 2014, New Avon obtained title to the seventeen Units.

[9] MHMI appealed the trial court's summary judgment ruling. Another panel of this Court considered as a matter of first impression whether New Avon had complied with the notice statutes governing the abandoned mobile home process. In a September 2014 opinion, the panel held that New Avon had not done so and therefore reversed and remanded with instructions to enter judgment in favor of MHMI. New Avon filed a petition to transfer, which our supreme court denied in March 2015. In September 2015, the trial court entered an order granting summary judgment in favor of MHMI and declaring MHMI the owner of the seventeen Units at issue. Each party's damages and offsets were yet to be determined.

[10] In February 2014, while the appeal in the MI cause was pending, New Avon filed a complaint for unjust enrichment against MHMI under cause number 32D05-1402-PL-9 ("the PL cause") to recover repair costs, insurance payments, and taxes on the three unauctioned Units. MHMI counterclaimed and

---

[2] Both New Avon and MHMI named the BMV and the Hendricks County treasurer as nominal defendants.

requested an accounting and a judgment for unpaid rents and interest. MHMI did not attempt to add Old Avon as a party to either lawsuit. In April 2015, the causes were consolidated and a bench trial was set for December 1, 2015.

[11] On November 25, 2015, less than a week before trial, MHMI filed a trial brief in which it alleged for the first time that it was entitled to relief under theories of tortious conversion, criminal conversion, unfair competition, unjust enrichment/imposition of constructive trust, and fraud. MHMI also asserted for the first time that it was entitled to treble damages, litigation costs, and attorney's fees under the Crime Victims Relief Act ("CVRA"). On November 30, New Avon filed an objection, a motion to strike MHMI's trial brief, and a motion for an order limiting testimony and evidence to the issues raised by the pleadings. New Avon asserted that "[t]he new causes of action raised by MHMI's Trial Brief are tantamount to 'Trial by Ambush.'" Appellant's App. at 121.

[12] On December 1, the first day of trial, the court informed the parties that it had not yet read either filing, would take the matter under advisement, and could "disregard testimony or evidence" once it had ruled. Tr. at 8. After MHMI rested its case, the trial court issued a written order stating that it would "only consider those sections [of New Avon's trial brief] for which evidence is presented at trial and those sections that support previously pled allegations and theories" and that "the presentation of evidence and testimony at the trial in this matter shall be limited to the issues raised by the effective pleadings in the matter." Appellant's App. at 124-25. The court told the parties, "I understand

we have a notice pleading state but notice pleading is still notice pleading, you still have to put people on notice and trial briefs do not put folks on notice." Tr. at 388. The trial concluded on December 2. On December 14, MHMI filed a motion to reconsider the order on New Avon's motion to strike. New Avon filed a response to MHMI's motion.

MHMI filed a motion for findings of fact and conclusions thereon, which the trial court granted, and the parties submitted proposed findings and conclusions. On January 7, 2016, the trial court issued extensive findings and separate judgments in each cause. The relevant conclusions in the MI cause judgment read as follows:

> **General Conclusions of Law:**
>
> 5. Indiana Code § 9-22-1.5 *et seq.* governs the Abandoned Mobile Home process.
>
> 6. Prior to the published opinion resulting from this case going up on appeal, … the statute had never been interpreted by a higher court.
>
> 7. I.C. § 9-22-1.5 *et seq.* as it existed at the time did not define "abandoned" and, at the very least, was subject to multiple interpretations regarding the procedure to be followed.
>
> 8. MHMI was not a purchaser without notice of [New Avon's] claims. The Purchase Agreement for the 17 Units with Old Avon explicitly stated that the 17 Units had not been in Old Avon's possession for years. Additionally, the dates of emails between Pelton and Miller make it very clear that Miller was aware of [New Avon's] claims of ownership through the Abandoned Mobile Home Process *before* MHMI closed the deal

with Old Avon. Moreover, the purchase price of the 17 Units, each [at] approximately $700.00, is very low compared to the values placed on the units by either party, and seems to reflect the uncertain state of the title to the 17 Units.

9. [New Avon's] process was determined flawed and, as a result, MHMI is the owner of the 17 Units.

10. "An accounting is a suit in equity governed by equitable principles and addressed to the sound discretion of the trial court. The trial court has full discretion to fashion equitable remedies that are complete and fair to all parties involved." *Hammes v. Frank*, 579 N.E.2d 1348, 1355 (Ind. Ct. App. 1991) (citations omitted).

….

***MHMI's Claims to Disgorge Lot Rents Collected by [New Avon]***

14. [New Avon] is and has been at all relevant times, the owner of the Park.

15. As the owner of the lots on the Park, [New Avon] is entitled to assess and charge lot rent for the occupation of its lots by mobile homes.

16. MHMI is not entitled to receive the lot rents collected by [New Avon] related to the 17 Units.

….

19. At Trial, MHMI urged the disgorgement of lot rents as a deterrent against other mobile home park owners. However, even if their characterizations of [New Avon] and Pelton were to be believed, no deterrent is necessary in light of recent revisions to the statute, IC § 9-22-1.5 *et seq*. The new, current version of the statute provides criteria to evaluate whether or not a mobile

home is considered abandoned (IC § 9-22-1.5-1.5). More importantly, the new version of the statute explicitly makes the process unavailable to mobile home parks. (IC § 9-22-1.5-1.3). Therefore, any disgorgement of the lot-rents collected would have no deterrent value.

20. It would be inequitable to disgorge the lot rents collected by [New Avon]. Where MHMI had the opportunity to—and, in fact, did—mitigate its damages by purchasing more mobile homes, [New Avon] had no opportunity to mitigate its damages related to lot-rents, because each lot only holds one mobile home, and it could not otherwise lease out the lots which were occupied by the 17 Units.

21. Accordingly, MHMI is not entitled to any of the lot rents, assessed or unassessed, collected or uncollected, by [New Avon] related to the 17 Units.

### MHMI's Claims for Repairs to the 17 Units

22. MHMI is not entitled to assess speculative-repair costs to the 17 Units against [New Avon].

….

### MHMI's Claim for Moving and Setting Expenses

26. MHMI is not entitled to the cost to move and re-set the 17 Units.

….

### MHMI's Claim to Disgorge Home Rents Collected by [New Avon] Related to the 17 Units

….

31. [New Avon] had no ownership claim of any sort over the 17 Units prior [to] July 9, 2012, the date of its auction under the Abandoned Mobile Home Process.

32. However, [New Avon] was entitled to collect Home Rents on the 17 Units against the accrued and accruing Lot-rents pursuant to the Security Agreement it was assigned when it purchased the Park.

33. Additionally, [New Avon] had statutory lien[s] against the 17 Units due to the accrued but unpaid lot-rents under IC § 16-41-27-29: "(a) Subject to subsection (b), the owner, operator, or caretaker of a mobile home community has a lien upon the property of a guest in the same manner, for the same purposes, and subject to the same restrictions as an innkeeper's lien or a hotel keeper's lien." [Subsection (b) deals with lien priority and is not relevant to this case].

34. Following the auction held on July 9, 2012, [New Avon] collected home rents under the auspices of ownership.

35. MHMI did not purchase the 17 Units until July 15, 2013, and not without notice of [New Avon's] competing claims of ownership.

36. Because MHMI knew the disputed ownership position it purchased, it would not be equitable to award it home rents which were collected prior to its date of purchase of the 17 Units, July 15, 2013.

37. Awarding MHMI home-rents predating its purchase would amount to an inequitable windfall for MHMI, who bought the 17 Units for de-minim[i]s value with full present-sense knowledge that someone else claimed ownership.

38. Further, awarding MHMI home-rents predating its purchase of the 17 Units would punish [New Avon] and its lien rights for

the misrepresentations of Old Avon regarding the status of liens against the 17 Units. MHMI may have an action against Old Avon for its misrepresentations, but it cannot assess those losses against [New Avon].

39. However, by virtue of its purchase of the 17 Units and [New Avon's] defective Abandoned Mobile Home Process Claim, MHMI is entitled to the actual value of the rents collected from the 17 Units by [New Avon] from July 15, 2013 to the present, which amounts to $58,293.00.

### MHMI's Claim for Hypothetical Home Rents

40. MHMI is not entitled to assess "lost rents" against [New Avon] for the months in which the 17 Units did not produce home rental income.

....

### MHMI's Request for Attorney's Fees and Litigation Expenses

44. "Indiana has consistently followed the American Rule." *Loparex, LLC v. MPI Release Technologies, LLC*, 964 N.E.2d 806, 816 (Ind. 2012).[3]

45. There is no contractual relationship between the parties which gives rise to a claim for attorney's fees.

46. MHMI has not plead or proven any theory of relief which entitles it to attorney's fees.

47. There is no equitable reason to depart from the American

---

[3] Under the American Rule, "parties pay their own attorney fees absent an agreement between the parties, statutory authority, or rule to the contrary." *Vasquez v. Phillips*, 843 N.E.2d 61, 64 (Ind. Ct. App. 2006).

Rule and require [New Avon] to fund MHMI's case and reimburse its attorney's fees and expenses of litigation.

48. Accordingly, MHMI shall bear its own attorney's fees and expenses of litigation.

***MHMI's Request for Prejudgment Interest***

49. "When the trier of fact determines liability for damages exists, prejudgment interest is proper only where a simple mathematical computation is required." *Hammes v. Frank*, 579 N.E.2d 1348, 1357 (Ind. Ct. App. 1991)[.]

50. This case invokes a medley of claimed damages and claimed set-offs, being complicated by a dispute over ownership which was only resolved after a mid-litigation appeal. The damages of the parties have never been readily calculable.

51. Prejudgment interest is not an appropriate remedy in this case, for either party.

***[New Avon's] Claims for Offsets for Repairs, Insurance, and Taxes Paid Related to 17 Units***

….

59. It is equitable to award [New Avon] a set-off of $67,415 for [repairs and taxes], as they were actually-incurred costs, undertaken with a belief of ownership, and which provide a substantial benefit to MHMI: not the least of which being the preservation of the income-producing ability of the 17 Units into the future.

**JUDGMENT**

The Court now enters the following judgment:

1. Judgment was previously rendered in favor of [MHMI] as to Count 1 of [New Avon's] Complaint, adjudging MHMI as the owner of the 17 Units and rendering Counts I and II of [MHMI's] Counterclaims (for Declaratory Judgment and an Order Directing Surrender and Turnover) moot, except as provided below.

2. Judgment for [MHMI] on Count III of [MHMI's] Counterclaim, for Accounting and Judgment. MHMI is initially entitled to $58,293.00 as disgorged home-rents collected by [New Avon]. However, [New Avon] is entitled to set-offs in the amount of $67,415.00. Because [New Avon's] set-offs exceed the amount to which MHMI is entitled, the Court awards MHMI $1.00 as a nominal judgment against [New Avon].

Appellant's App. at 35-43 (citation format altered).

[14] The trial court's findings and conclusions regarding the three units involved in the PL cause are substantially similar to those regarding the seventeen units involved in the MI cause. The differing and/or dispositional conclusions read as follows:

*General Conclusions:*

5. At no time did [New Avon] have an ownership interest in the 3 Units, actual or believed.

6. Despite not having an ownership interest in the 3 Units, [New Avon] expended funds and collected rents related to the 3 Units as a measure of mitigation of damages, as its alternative was to do nothing, which would harm both the 3 Units and the Park.

7. Critically, there was no legal barrier preventing MHMI from collecting the 3 Units at any time after its purchase, and there

was no testimony at trial that [New Avon] prevented or attempted to prevent MHMI from collecting the 3 Units. Rather, MHMI appears to have made the decision to leave the 3 Units (which it owned without any competing claims of ownership) on [New Avon's] Park while the claims related to the other 17 Units … were litigated.

8. Equity does not require this Court to *punish* either party for their actions or inactions related to the 3 Units. Rather, equity demands that this Court fashion a judgment which is fair to both parties in light of the situation between them.

….

### *MHMI's Claim to Disgorge Lot Rents Collected by [New Avon]*

14. [New Avon] is and has been at all relevant times, the owner of the Park.

15. As the owner of the lots [i]n the Park, [New Avon] is entitled to assess and charge lot rent for the occupation of its lots by mobile homes.

16. MHMI is not entitled to receive the lot rents collected by [New Avon] related to the 3 Units.

….

### *MHMI's Claims for Repairs to the 3 Units*

20. MHMI is not entitled to assess speculative-repair costs to the 3 Units against [New Avon].

….

### *MHMI's Claim to Disgorge Home Rents Collected by [New Avon] Related to the 3 Units*

….

29. [New Avon] has never had an ownership claim over the 3 Units.

30. However, [New Avon] was entitled to collect home rents on the 3 Units against the accrued and accruing unpaid Lot-rents pursuant to the Security Agreement it was assigned when it purchased the Park.

31. Additionally, [New Avon] had a statutory lien against the 3 Units due to the accrued but unpaid lot-rents under IC § 16-41-27-29: "(a) Subject to subsection (b), the owner, operator, or caretaker of a mobile home community has a lien upon the property of a guest in the same manner, for the same purposes, and subject to the same restrictions as an innkeeper's lien or a hotel keeper's lien." [Subsection (b) deals with lien priority and is not relevant to this case].

32. MHMI did not purchase the 3 units until July 15, 2013.

33. Awarding MHMI home-rents predating its purchase would amount to an inequitable windfall for MHMI.

34. Further, awarding MHMI home-rents predating its purchase of the 3 Units would punish [New Avon] and its lien rights for the misrepresentation of Old Avon regarding the status of liens against the 3 Units. MHMI may have an action against Old Avon for its misrepresentations, but it cannot assess those losses against [New Avon].

35. However, by virtue of its purchase of the 3 Units, MHMI is entitled to the actual value of the rents collected from the 3 Units by [New Avon] from July 15, 2013 to the present, which amounts to $16,487.00.

*MHMI's Claims for Hypothetical Home Rents*

36.  MHMI is not entitled to assess "lost rents" against [New Avon] for the months in which the 3 Units did not produce home rental income.

….

*MHMI's Request for Attorney's Fees and Litigation Expenses*

….

44.  … MHMI shall bear its own attorney's fees and expenses of litigation.

*MHMI's Request for Prejudgment Interest*

….

47.  Prejudgment interest is not an appropriate remedy in this case, for either party.

*[New Avon's] Claims for Offsets for Repairs, Insurance, and Taxes Paid Related to the 3 Units*

….

53.  It is equitable to award [New Avon] a set-off of $11,256.00 for [repairs and taxes], as they were actually-incurred costs which provide a substantial benefit to MHMI:  Not the least of which being the preservation of the income-producing ability of the 3 Units into the future.

**JUDGMENT**

The Court now enters the following judgment:

1. Judgment for [MHMI] on its Counterclaim for Accounting and Judgment. MHMI is initially entitled to $16,487.00 as disgorged home-rents collected by [New Avon]. However, [New Avon], by way of its Complaint, is entitled to set-offs in the amount of $11,256.00 for repairs and taxes. Therefore, the Court awards MHMI $5,321.00 as a judgment against [New Avon].

*Id*. at 53-59.

[15] The trial court also issued the following order on MHMI's motion to reconsider the order on New Avon's motion to strike MHMI's trial brief: "The Court reviewed [MHMI's motion] and the respective response and considered all previous pled allegations as set forth in [MHMI's] complaint and all evidence and theories presented at trial." Appellant's App. at 60. MHMI appealed the judgments in both causes, and we granted its motion to consolidate the appeals.

# Discussion and Decision

## Section 1 – The trial court did not abuse its discretion in not awarding MHMI relief under theories of tortious conversion, unjust enrichment, and constructive trust.

[16] MHMI first contends that the trial court erred in not awarding it relief under theories of tortious conversion, unjust enrichment, and constructive trust.[4] We disagree. In *Wysocki v. Johnson*, 18 N.E.3d 600 (Ind. 2014), our supreme court held that where the pleadings give the trial court a choice to find a defendant liable for either a common-law tort or a quasi-criminal offense under the CVRA, "the court necessarily has discretion to choose tort liability and reject quasi-criminal liability," even when the civil tort and the quasi-criminal offense are "closely related." *Id*. at 605.[5] We see no reason why the same principle should not apply in this case, where MHMI has asserted that its counterclaims encompass alternative avenues of relief: either a declaratory judgment and an

---

[4] MHMI accuses the trial court of "striking" these theories. Appellants' Br. at 31. The order on MHMI's motion to reconsider clearly indicates that the court did not strike them, even though it would have been well within its discretion to do so. *See Hilliard v. Jacobs*, 927 N.E.2d 393, 400-01 (Ind. Ct. App. 2010) (finding no abuse of discretion in denial of plaintiff's motion for leave to amend complaint "to add new legal theories that were available to her at the outset of the case" three years earlier), *trans. denied*; *Butler ex rel. Estate of Butler v. Kokomo Rehab. Hosp., Inc.*, 744 N.E.2d 1041, 1047 (Ind. Ct. App. 2001) ("For a defendant to make efficient and educated legal decisions regarding their case, the complaint must put the defendant on notice concerning why it is potentially liable and what it stands to lose."), *trans. denied*. Not until MHMI filed its trial brief was New Avon put on notice that it was potentially liable for conversion, unjust enrichment, and fraud and that it stood to lose treble damages, litigation costs, and attorney's fees.

[5] Citing *Wysocki*, MHMI properly concedes that "this Court is unlikely to award damages under the CVRA" in this case. Appellant's Br. at 33.

accounting or damages for tortious conversion and unjust enrichment and imposition of a constructive trust.[6]

[17] MHMI emphasizes that "'[m]ens rea is not an element of tortious conversion." Appellant's Br. at 35 (quoting *Coffel v. Perry*, 452 N.E.2d 1066, 1069 (Ind. Ct. App. 1983)); *see Campbell v. Criterion Grp.*, 621 N.E.2d 342, 346 (Ind. Ct. App. 1993) (describing tortious conversion as "appropriat[ing] another's personal property for the tortfeasor's own use and benefit, in exclusion and defiance of the owner's rights, and under an inconsistent claim of title."), *opinion on reh'g*. But conversion contemplates "wrongful action[,]" *Chesterton State Bank v. Coffey*, 454 N.E.2d 1233, 1237 (Ind. Ct. App. 1983), as does a constructive trust. *See Leever v. Leever*, 919 N.E.2d 118, 122 (Ind. Ct. App. 2009) ("A constructive trust is a creature of equity, devised to do justice by making equitable remedies available against one who through fraud or other wrongful means acquires property of another. A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.") (citation omitted). Furthermore, MHMI asserted in its trial brief that "[t]his case is about deceptive conduct." Appellant's App. at 106. The trial court obviously disagreed with this assertion based on the evidence and testimony before it, and we will not reweigh that evidence or assess witness credibility. *In*

---

[6] MHMI cites no authority for its suggestion that the trial court should have made findings regarding why it did not award MHMI the relief requested in its trial brief.

*re Moeder*, 27 N.E.3d 1089, 1097 (Ind. Ct. App. 2015), *trans. denied*. Likewise, we will not second-guess the trial court's balancing of the equities with respect to both parties' accounting claims. *See Hammes*, 579 N.E.2d at 1355 ("An accounting is a suit in equity governed by equitable principles and addressed to the sound discretion of the trial court. The trial court has full discretion to fashion equitable remedies that are complete and fair to all parties involved.") (citation omitted). The trial court did not abuse its discretion in not awarding MHMI relief under theories of tortious conversion, unjust enrichment, and constructive trust. *Cf. Wysocki*, 18 N.E.3d at 605 ("[A] trial court may find compensatory damages to be warranted, yet be reluctant to find a defendant's conduct 'heinous' enough to punish under the CVRA.").[7]

## Section 2 – The trial court did not abuse its discretion by not awarding prejudgment interest to MHMI.

[18]     MHMI also claims that the trial court erred by not awarding it prejudgment interest. An award of prejudgment interest is founded upon the theory that there has been a deprivation of the plaintiff's use of money and that unless

---

[7] Our resolution of this issue disposes of most of MHMI's arguments regarding damages and offsets for various rents and repairs, which are premised on its assertion that the trial court erred in not awarding it relief under theories of conversion, unjust enrichment, and constructive trust. The only argument not premised on that assertion is that the trial court erred by not awarding MHMI home rents predating its purchase of the mobile homes from Old Avon. Essentially, MHMI argues that New Avon is not entitled to those rents because it had no legal basis for collecting them under the security agreement, and therefore they should be awarded to MHMI. But this argument ignores the trial court's conclusions that New Avon was entitled to those rents pursuant to a statutory lien and that awarding them to MHMI would amount to an inequitable windfall for MHMI. MHMI does not challenge these conclusions, and therefore we affirm the trial court. Assuming for argument's sake that New Avon was not legally entitled to the pre-purchase home rents, we note that MHMI failed to implead a third party that was.

interest is added, the plaintiff cannot be fully compensated for the loss. *Wayne Twp. v. Lutheran Hosp. of Ft. Wayne, Inc.*, 590 N.E.2d 1130, 1134 (Ind. Ct. App. 1992), *trans. denied*. Prejudgment interest "is recoverable not as interest but as additional damages to accomplish full compensation." *Id*. "Prejudgment interest is justified where there has been an unreasonable delay in the payment of an amount ascertainable in accordance with fixed rules of evidence and accepted standards of valuation." *Harlan Sprague Dawley, Inc. v. S.E. Lab Grp., Inc.*, 644 N.E.2d 615, 617 (Ind. Ct. App. 1994), *trans. denied* (1995). Damages that are the subject of a good-faith dispute cannot allow for a prejudgment interest award, "nor is such an award proper when the trial court must exercise its judgment to assess the amount of damages[.]" *Clark v. Hunter*, 861 N.E.2d 1202 1208 (Ind. Ct. App. 2007). "Prejudgment interest is proper only where a simple mathematical computation is required." *Dale Bland Trucking, Inc. v. Kiger*, 598 N.E.2d 1103, 1106 (Ind. Ct. App. 1992), *trans. denied*. "Our standard of review is for an abuse of discretion, focusing on the trial court's threshold determination of whether the facts satisfy the test for prejudgment interest." *Harlan*, 644 N.E.2d at 617.

[19] The undisputed findings support the trial court's conclusion that this case involved "a medley of claimed damages and claimed set-offs, being complicated by a dispute over ownership which was only resolved after a mid-litigation appeal," and that the parties' damages "have never been readily calculable." Appellant's App. at 41. The ownership of the mobile homes, as well as the damages and offsets to which each party was entitled, were matters of

considerable good-faith dispute, and the trial court exercised its legal judgment and equitable discretion in assessing the amount of damages.[8] Under these circumstances, we conclude that the trial court did not abuse its discretion in not awarding MHMI prejudgment interest. Therefore, we affirm the trial court in all respects.

[20] Affirmed.

May, J., and Mathias, J., concur.

---

[8] MHMI argues,

> The trial court's reference to a "medley" of claims suggests that the trial court merely failed to wade into the evidence and perform the required calculation. MHMI is not seeking prejudgment interest on all of its claims. It is seeking prejudgment interest only on those claims which are easily calculable from New Avon's books and records - damages relating to rents New Avon *actually collected* (Pre-Purchase and Post-Purchase Rents, and Lot Rents). MHMI does not seek prejudgment interest for repair costs or "additional" home rents that should have been collected.

Appellant's Reply Br. at 12. This argument ignores the fact that any mathematical computation was possible only after the trial court exercised its legal judgment and equitable discretion to determine the damages and offsets that each party was entitled to. MHMI's suggestion that the trial court somehow shirked its duty is not well taken.